939 A.2d 149

**Robert Leon KELLEY, Jr.**

v.

**STATE of Maryland.**

**No. 45, Sept. Term, 2007.**

Court of Appeals of Maryland.

Jan. 9, 2008.

Stanley E. Fisher, Assigned Public Defender (Williams & Connolly LLP, Washington, DC), on brief, for petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned), and DALE R. CATHELL (Retired, Specially Assigned), JJ.

WILNER, J.

Petitioner, Robert Kelley, was convicted by a jury in the Circuit Court for Washington County on three counts of felony theft—theft of property having a value of $500 or more. *See* Maryland Code, § 7-104(g) of the Criminal Law Article (CL). The maximum penalty prescribed for felony theft is imprisonment for fifteen years and a fine of $25,000. Upon each of the three convictions in this case, the court imposed a six-year prison sentence, the sentences to run consecutively for an aggregate of eighteen years.

The thefts, which petitioner no longer contests, involved multiple items of property taken from three different owners, over differing periods of time, from three separate locations a mile or more apart from one another. Count 5 charged the theft of two items of property from Mary Trumpower between December 4 and December 18, 2003. During that period, an antique sleigh was stolen from her barn and an antique wheelbarrow was taken from her garage. Count 11 involved the theft of several items from Donald Spickler. During the period November 27 to 29, 2003, an antique sleigh was taken

from Mr. Spickler's barn and miscellaneous glassware and a toy tank were taken from his house. Count 16 dealt with various items taken from Eliza Spickler, Donald Spickler's mother. During the period November 1 to December 18, 2003, certain items were taken from her vacant house and others were taken from her store. The house was vacant because Ms. Spickler was in a nursing home.[1]

In each of the theft counts, the State relied on CL § 7-103(f) to aggregate the value of each item taken in order to reach the $500 threshold for felony theft. Section 7-103(f), which is part of the section dealing with the determination of value for purposes of the theft law, provides:

"When theft is committed in violation of this part under one scheme or continuing course of conduct, whether from the same or several sources:

(1) The conduct may be considered as one crime; and

(2) the value of the property or services may be aggregated in determining whether the theft is a felony or a misdemeanor."

Kelley believes that it is impermissible for the State to aggregate the value of the property taken with respect to the three individual counts, so as to make the separate takings one felony theft in each case, but then to consider the three series of thefts separate for sentencing purposes. The necessary underpinning of his argument is that he had but one scheme to steal from all three victims, not three separate schemes, and that all of the thefts were therefore committed pursuant to that one scheme as one continuing course of conduct. Accordingly, he urges, there was only one crime of felony theft, for which only one sentence could lawfully be imposed. The argument, as he articulates it, is that "where the State aggregates and there are not separate schemes, consecutive sentences merge under the single larceny doctrine." As an

1. The Criminal Information filed against Kelley contained 22 counts. In addition to the three theft offenses, he was charged with various burglaries and conspiracy. We are concerned here only with the sentences imposed on the theft convictions.

alternative, he insists that, because Donald Spickler was in effective control of the property of his mother, Eliza, the theft of her property must be aggregated with the theft of his property, so, at the most, there could be only two felony thefts.

The Court of Special Appeals saw no merit in his argument and, in an unreported opinion, affirmed the judgment entered by the Circuit Court. We also see no merit to the argument and shall therefore affirm the judgment of the intermediate appellate court.

At issue is what is known as the "single larceny doctrine," the substance of which this Court first recognized in *State v. Warren,* 77 Md. 121, 26 A. 500 (1893) and discussed most recently in *State v. White,* 348 Md. 179, 702 A.2d 1263 (1997). The doctrine developed as a common law principle, and, as we pointed out in *White,* the issue of its application, as a common law principle, has arisen principally in three contexts:

"(1) whether a count in a charging document alleging that the defendant stole the property of several persons at the same time charges more than one offense and is therefore duplicitous; (2) whether a prosecution, conviction, or sentencing for stealing the property of one person bars, under double jeopardy principles, the prosecution, conviction, or sentencing for having stolen the property of another person at the same time; and (3) whether, when the property of different persons is stolen at the same time, the values of the separate items of property may be aggregated to raise the grade of the offense or the severity of the punishment, to the extent that either is dependent on the value of the property taken."

*Id.* at 182, 702 A.2d at 1264.

It was in the first context that the principle arose in *Warren,* the issue being whether a count in an indictment that charged the defendant with stealing, at the same time, several sums of money belonging to different owners was duplicitous: "Does the stealing of several articles of property at the same time, belonging to several owners, constitute one offense, or as

many separate offenses as these different owners of the property stolen?" *Warren,* 77 Md. at 122, 26 A. at 500.

Although recognizing that, at the time, there was some conflict regarding the matter, this Court, without mentioning the single larceny rule by name, concluded that, upon principle, "the stealing of several articles *at the same time,* whether belonging to the same person or to several persons, constituted but one offense." *Id.* (Emphasis added). The rationale for that ruling was as follows:

> It is but one offense because the act is one continuous act,— the same transaction; and, the gist of the offense being the felonious taking of the property, we do not see how the legal quality of the act is in any manner affected by the fact that the property stolen, instead of belonging to one person, is the several property of different persons."

*Id.*

The *Warren* Court stressed that the rule applied only when the stealing of the different articles occurred at the same time, which was consistent with the "one continuous act" characterization, and was careful to note that "the stealing of property *at different times,* whether belonging to the same person or different persons, constituted separate offenses, . . ." *Id.* at 123, 26 A. at 500. (Emphasis added). That caveat, which, in light of the facts of the case was in the nature of *dicta,* was essentially ignored in at least two subsequent cases. In *Delcher v. State,* 161 Md. 475, 158 A. 37 (1932), the Court found non-duplicitous a single count of larceny where a bill of particulars showed that the defendant had stolen money from his employer on several occasions over a nearly two-year period. It was not necessary, the Court said, for there to be separate counts "covering each of the items in a series of continuing offenses, . . . ." *Id.* at 483, 158 A. at 41.

In *Horsey v. State,* 225 Md. 80, 169 A.2d 457 (1961), the Court, in a *per curiam* Opinion that cited neither *Warren* nor *Delcher,* essentially followed the *Delcher* approach. The defendant was charged with stealing various items of clothing and accessories on May 23, 1960, from the store at which he

was employed, *i.e.*, from a single owner. The evidence showed, however, that those items were not all taken at one time and that he was in possession of some of the property in March. In light of that, the defendant argued that separate crimes had been committed and that the State could not add the value of the property taken in March to the value of the property taken in May in determining whether the felony threshold had been met. The Court rejected that argument and concluded that the trial court could properly have found "that the separate takings were pursuant to a common scheme or intent" and that it "is generally held that if they are, the fact that the takings occur on different occasions does not establish that they are separate crimes." *Id.* at 83, 169 A.2d at 459. As an alternative holding, the Court quickly observed that there was sufficient evidence to show that the value of the property found in the defendant's possession in March surpassed the felony threshold, and that "[t]his alone would support the verdict."

*Delcher* and *Horsey* expanded Maryland common law to the point of recognizing the single larceny doctrine, or at least its substance, where several items of property are stolen either at the same time from the same or different people or at different times from the same owner. *See also Govostis v. State*, 74 Md.App. 457, 538 A.2d 338 (1988) (where evidence showed that defendant loaded victim's clothing into victim's car and then stole both, as part of one criminal scheme, separate sentences for stealing the car and the clothing could not stand). The one circumstance still outside the common law rule, or at least not addressed in that context, was where several items are stolen from *different* owners at *different* times. That circumstance—the one now before us—is addressed by statute.

In 1978, the General Assembly, following the lead of the Model Penal Code, enacted a new, consolidated theft statute that encompassed seven pre-existing larceny offenses. *See* 1978 Md. Laws, ch. 849. The new statute was the product of a joint subcommittee of the Legislature. *See* REVISION OF MARYLAND THEFT LAWS AND BAD CHECK LAWS, Joint Subcommittee on

Theft Related Offenses, Maryland General Assembly (1978). As part of the statute, the Legislature codified the common law single larceny doctrine as it had been applied in *Warren, Delcher,* and *Horsey* and extended it to cover the previously unaddressed circumstance. That statute, now codified as CL § 7–103(f), makes clear that, when theft is committed "under one scheme or continuing course of conduct, whether from the same or several sources: (1) the conduct may be considered as one crime; and (2) the value of the property or services may be aggregated in determining whether the theft is a felony or a misdemeanor."

In its Report, the joint subcommittee noted:

"The paragraph on aggregation was inserted on the basis that a person who steals property at different times from several persons and places as part of a continuing scheme has engaged in activity which is just as reprehensible as a person who steals an equal amount from a single person and place at one time. It is a marked departure from the common law which requires that the property be stolen from a single person at a single time and place." [2]

---

2. At the end of that Comment, the joint subcommittee added "For a general discussion of this provision see Model Penal Code sec. 206.15(3), Comment (Tent. Draft No. 2, 1954)." The text of what was then § 206.15(3) of the draft Model Penal Code (current § 223.1(2)(c)) was very similar to the text proposed by the joint subcommittee and, with only style changes, is now codified as CL § 7–103(f). The Comment to § 206.15(3) in Tentative Draft 2 noted: "The scope of the actor's disregard of property rights cannot always be judged by looking only at the amount which he takes at a single moment from a single person. The bank teller who day after day steals a $20 bill from his employer will have $600 at the end of a month, and is clearly engaged in felonious theft. The driver of a department store delivery truck containing hundreds of parcels, each worth less than $50, ought not to be regarded as a petty thief, guilty of multiple offenses, when he sells the contents of the truck to a 'fence' and makes off with the proceeds. A swindler who moves along the street cheating housewives out of individually petty amounts is in the same situation, criminologically, although both the place and the victim change with each transaction. Subsection (3) adopts unity of victim and unity of scheme or course of conduct, as alternative bases for determining the scope of the actor's thieving."

In that last sentence, the joint subcommittee apparently overlooked this Court's pronouncements in *Warren, Delcher,* and *Horsey,* which were not mentioned but where, as noted, the Court had applied at least the substance of the single larceny doctrine where property was stolen from several persons at the same time or, if as part of a continuing scheme, from one person at different times. In those settings, the statute merely codified the then-existing Maryland common law. What the statute clearly added to the law, however, was that the doctrine could also apply in the setting not reached in *Warren, Delcher,* or *Horsey*—where, as part of one continuing scheme or course of conduct, several items are stolen from *different* persons at *different* times.

The Court of Special Appeals considered this statutory expansion in *State v. Hunt,* 49 Md.App. 355, 432 A.2d 479 (1981). In that case, the defendant was charged in two counts with stealing goods from seven different stores on a single day. The two counts were identical, except that one charged felony theft and the other misdemeanor theft. Although all of the thefts were alleged to have occurred on the same day, it appeared that all of the stores were in one shopping mall, so the court treated the thefts as having occurred at different times, as Hunt went from one store to another. Hunt contended that the counts were duplicitous, because they charged separate offenses, and both the circuit court and the Court of Special Appeals agreed with him.

Citing the Maryland statute and the joint subcommittee's comment, the intermediate appellate court observed that "before a series of thefts from different owners at different times and places can be considered as one offense, charged in a single count of the charging document, and the value of the stolen property aggregated, the thefts must be committed pursuant to one scheme or continuing course of conduct." *Id.* at 361, 432 A.2d at 482. The court then added:

"The charging documents in question allege a series of thefts but fail to allege that they were committed pursuant to one scheme or continuing course of conduct. Therein lies the problem. Absent such an allegation, the charging docu-

ments merely allege separate and distinct crimes in a single count which makes them duplicitous."

*Id.*

Although in *Hunt* the single larceny doctrine was not applied because the indictment failed to allege a single scheme and continuing course of conduct, the clear implication is that, had the indictment contained such an allegation and had the State been able to prove that allegation, a conviction for felony theft would have been sustained.

*White* involved the theft of two items of property—a canvas bag and a small television set—from a schoolhouse office shared by two or more teachers. The evidence indicated that White entered the office and stole the two items at the same time. It was not clear who owned the television set, but the case proceeded on the assumption that it was not owned by the teacher whose canvas bag was stolen, so the case presented the situation of the theft of two items owned by different persons at the same time. Instead of aggregating the value of the items, however, the State charged White with two counts of misdemeanor theft, of which he was convicted and for which he received consecutive sentences of eighteen months. On appeal, the Court of Special Appeals applied the single larceny doctrine, regarded the two takings as one offense, and merged the convictions, thereby striking one of the sentences. We affirmed.

In *White,* the Court addressed two basic issues raised by the State: first, whether Maryland had ever, in fact, adopted the common law single larceny rule, and second, whether what is now CL § 7–03(f) precluded application of that rule. As to the first, we "ma[d]e explicit what might otherwise have been implicit from *Warren*—that, although application of the [single larceny] doctrine may depend on the factual circumstances presented, the single larceny doctrine was part of Maryland common law" and that, under that common law "the stealing of several articles of property at the same time, belonging to several owners (or the same owner) *ordinarily* constituted one offense." 348 Md. at 192, 702 A.2d at 1269. (Emphasis in

original). In a footnote to that statement, we observed that we stressed the word "ordinarily" so as not "to foreclose the prospect of a different result where the facts clearly would have indicated that separate and distinct thefts were intended and accomplished" and that, "[i]n such a circumstance, the different result would not arise from rejection of the single larceny doctrine but rather from a conclusion that it did not apply." *Id.*, n. 5.

The second issue raised in *White* had two parts. The State argued that, because the statute defined the crime of theft in terms of exercising unauthorized control over the property of "the owner" for the purpose of depriving "the owner" of the property, the Legislature, by referring to "the owner" in the singular, intended to permit separate convictions for stealing from different owners. Although accepting that proposition in principle, we concluded that it did not suffice to repeal the single larceny doctrine, as contended by the State. The term "owner," we said, was not intended to define the unit of prosecution but merely to identify whose property a person may not exercise unauthorized control over. The State also argued that CL § 7–103(f) was adopted solely for the purpose of allowing aggregation and that it therefore did not apply in any other context, including defining the unit of prosecution. We rejected that as well, concluding that there was nothing in the legislative history of the statute even to suggest an intent to abrogate the single larceny doctrine as it had developed in the common law.

We are not concerned here with the pleading issue addressed in *Hunt*. As noted, the Criminal Information filed against Kelley did not co-mingle the thefts from the three owners, but charged, in separate counts, the thefts from each. Under *Delcher* and *Horsey*, it was appropriate to regard the multiple takings from each owner as part of one scheme or continuing course of conduct with respect to that owner and thus to aggregate the value of the different items stolen from each such owner for purposes of charging one felony offense. Kelley does not contest those aggregations.

■ Two things are clear from *White*, and most particularly from our footnote 5 in the *White* Opinion, *see ante*. First, when considering whether the theft of multiple items of property, at the same time or at different times, from the same owner or from different owners, constitutes one offense or separate offenses (and with that, whether the value of the different items can be aggregated or not aggregated), the ultimate criterion is whether the separate takings were part of a single scheme or continuing course of conduct If so, one offense must be charged and the values may be aggregated to determine whether the offense is a felony. To the extent that is not the case, the takings constitute separate offenses and aggregation of values is permissible only with respect to the takings included in each of the respective separate offenses.

■ The second lesson from *White* is that the determination of whether multiple takings were part of a single scheme or course of conduct, for any purpose other than resolving the sufficiency of the charging document,[3] is a factual matter that must be based on evidence. We observed there that the single larceny doctrine "rests on the notion that the separate takings are all part of a single larcenous scheme and a continuous larcenous act, and, *when the evidence suffices to establish that fact, directly or by inference,* most courts have had no problem applying the doctrine." *White*, 348 Md. at 188–89, 702 A.2d at 1268. (Emphasis added). The question, then, is whether the State has sufficiently established beyond a reasonable doubt that there was, or, in this case, was *not*, a single larcenous scheme or course of conduct.[4]

---

**3.** The sufficiency of the charging document is ordinarily determined based on what it alleges; if it seeks to include in one count multiple takings at different times, from either the same or multiple owners, does it *allege* a single scheme or course of conduct? *See State v. Hunt, supra,* 49 Md.App. 355, 432 A.2d 479.

**4.** Which of the two the State must prove, of course, depends on what the State has charged and how it has elected to proceed. In this case, it charged three separate felonies, and that is what it was obliged to show.

This is necessarily a fact-intensive matter, and, to the extent that it is influenced by the defendant's intent, one that, in most instances, must be determined on the basis of inference. In *Richardson v. Commonwealth*, 25 Va.App. 491, 489 S.E.2d 697, 700 (1997), the Virginia court noted that "[t]he circumstances to be considered that will bear upon the issue are the location of the items stolen, the lapse of time between their taking, the general and specific intent of the thief, the number of owners, and whether intervening events occurred between the takings." Even with this kind of guidance, however, some of the decisions in other States are not easy to reconcile.

Our case law, supplemented by CL § 7–103(f) and the gloss put on that statute by the Comment of the legislative subcommittee that drafted it, makes it much easier to find the requisite single scheme or continuing course of conduct and apply the single larceny doctrine to the taking of property from one or several owners at the same time or multiple takings from a single owner, even if carried out over a period of time. That seems to be consistent with the law nationally. *See* Daniel H. White, *Single or Separate Larceny Predicated Upon Stealing Property from Different Owners at the Same Time*, 37 A.L.R. 3d 1407 (1971); Peter G. Guthrie, *Series of Takings Over a Period of Time as Involving Single or Separate Larcenies*, 53 A.L.R. 3d 398 (1973); *also White, supra*, 348 Md. 179, 702 A.2d 1263 and cases cited at 188, 702 A.2d 1263, 1267–68; and cases cited in *Dyson v. State*, 163 Md.App. 363, 376–77, 878 A.2d 711, 719 (2005).

Although the same principles apply where there are multiple takings from different owners at different times and at different locations, the courts have been very reluctant to find a single scheme or continuing impulse or course of conduct in that situation. *See State v. Rowell*, 121 N.M. 111, 908 P.2d 1379 (1995); *People v. Perlstein*, 97 A.D.2d 482, 467 N.Y.S.2d 682 (1983); *State v. Maggard*, 61 S.W. 184 (Mo.1901); *State v. Cabbell*, 252 N.W.2d 451 (Iowa 1977). Indeed, the general rule outside of Maryland seems to be that the takings in that situation may not be consolidated and regarded as a single offense, but must be treated as separate offenses. Professors

Torcia and LaFave are in agreement on that principle. Torcia notes:

> "When several articles are stolen by the defendant from different owners on different occasions, multiple larcenies are committed. It matters not that the takings occur on the same expedition, and are committed in rapid succession or in pursuance of a larcenous scheme or plan."

3 Charles E. Torcia, WHARTON'S CRIMINAL LAW, § 347 (1995). LaFave states, just as succinctly, "A thief may steal different articles from different victims at different times and places, and such takings cannot be aggregated for the purpose of making one grand larceny out of several petit larcenies." 3 Wayne R. LaFave, SUBSTANTIVE CRIMINAL LAW, § 19.4(b) at 82 (2nd ed.2003).

■ CL § 7–103(f) is not so rigid. It would allow a court, upon evidence establishing the fact beyond a reasonable doubt, to find that takings from different owners at different times and locations were pursuant to a single scheme and constituted a continuing course of conduct. Such a single scheme conceivably may be found where multiple takings from different owners at different locations are in quick and unbroken succession and from a limited area. As noted, *State v. Hunt, supra,* 49 Md.App. 355, 432 A.2d 479, left that implication. Where there is a more significant time lapse between the takings, however, or they occur from locations that are not in very close proximity, the general rule that the takings are not part of a single scheme or a continuing course of conduct should be applied, for it is far more difficult to infer a single scheme or continuing impulse or course of conduct in that situation.

■ This is not a case in which the takings from the three owners occurred in quick and unbroken succession *or* from a limited area *or* from locations that were in close proximity. They occurred during different time periods, at least two of which (Mary Trumpower and Donald Spickler) did not even overlap; there was no evidence that any of the takings from one owner occurred in quick or unbroken succession of those

from another; and, as noted the locations were separated from each other by at least a mile. For these reasons, we agree that the State proved three separate felony thefts and that separate sentences were appropriately imposed on each of them. The fact that Donald Spickler exercised some general dominion and control over the property of his mother, Eliza, while she was in a nursing home, is irrelevant. There were still separate thefts.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.