971 A.2d 949

**Deron Maurice WEBB**

v.

**STATE of Maryland.**

**No. 2711, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 12, 2009.

Emily L. Levenson (Renee M. Hutchins, Nancy Forster, Public Defender on the brief), Baltimore, for appellant.

Brenda Gruss (Douglas F. Gansler, Attorney General on the brief), Baltimore, for appellee.

Panel: DAVIS, HOLLANDER, JAMES A. KENNEY, III (retired, specially assigned), JJ.

DAVIS, J.

Following a trial on October 24 and 25, 2007, Deron Maurice Webb, appellant, was convicted by a jury in the Circuit Court for Howard County of three counts of felony theft and numerous related offenses. Pursuant to each of the three theft convictions, the trial court imposed a ten-year prison sentence, each to run consecutively for an aggregate of thirty years. Appellant was further sentenced to an additional two years of imprisonment for his other convictions.[1]

From these convictions and sentences, appellant filed the instant appeal, presenting two questions[2] for our review, which we have rephrased as follows:

---

1.  The Criminal Information filed against appellant contained twenty-four counts. In addition to the three felony theft offenses, appellant was charged with various driving and other theft-related offenses. We are concerned here only with the three convictions for felony theft.

2.  The issues, as set forth by appellant, are:

    I.  Must [appellant's] three individual convictions for felony theft be merged under the single larceny doctrine, as set forth in *State v. Warren* [, 77 Md. 121, 26 A. 500 (1893),] and *Kelley v. State*, [402 Md. 745, 939 A.2d 149 (2008),] because the three thefts that formed the

1. Does application of the single larceny doctrine dictate that appellant's actions constituted a single criminal act?

2. Did the trial court's instructions to the jury adequately cover legal issues properly generated by the evidence?

For the reasons that follow, we answer appellant's first question in the affirmative and we conclude that appellant's second question was not properly preserved. Accordingly, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

On December 7, 2007, two motorcycles and a van were reported stolen from the area around Glen Burnie, Maryland. Howard County police were not provided with information as to the identity of the perpetrators; however, they were able to locate one of the motorcycles by its LoJack[3] signal near Port Capital Drive in Howard County. The investigating officers determined that the signal emanated from a van parked in the driveway of a townhouse at 7235 Old Friendship Way. After several hours of covert surveillance of the van, appellant was seen exiting the townhouse and entering the van. The officers followed the van once it turned onto the main road. Shortly thereafter, the van collided with two parked cars, after which appellant jumped out of the van and escaped on foot. The police pursued appellant and apprehended him two to three minutes later. The stolen motorcycles were found inside the van, which was also later determined to have been stolen.

---

basis for the convictions took place at one time and in one place, and thus were part of a single scheme and continuing course of conduct?

II. Must [appellant's] conviction be reversed because the trial court violated his right to due process of law when it gave a general advisory jury instruction, not limited to "the law of the crime"?.

**3.** LoJack is an aftermarket vehicle tracking system whereby a transponder is hidden on a vehicle, which allows that vehicle to be tracked and located by police after being stolen.

A jury trial was held on October 24 and 25, 2007. Prior to jury deliberations, the trial judge charged the jury as follows during the course of his instructions:

> Once again, these written instructions are going back. You can review them individually or collectively to determine what, if any, significance you give to these instructions and what, if any differences you see.

Appellant's counsel interposed no objection, nor did he take exceptions to the instruction. At the conclusion of jury deliberations, appellant was convicted of three counts of possession of stolen property—two counts of misdemeanor fleeing and eluding, and one count each of reckless driving, "failing to stop after an unattended vehicle and property damage accident" and driving while privilege was suspended. Appellant was acquitted, *inter alia*, of the counts of theft of motor vehicle. On January 11, 2008, appellant was sentenced to thirty-two years to the Division of Correction. This timely appeal followed. Additional facts will be provided *infra* as warranted.

## ANALYSIS

### I

Appellant contends that application of the single larceny doctrine dictates that his actions constituted a single criminal act. Appellant was convicted and sentenced for three separate counts of possession of stolen property[4] subsequent to the

---

4. Md.Code Ann. (2002, 2008 Supp.), Criminal Law, § 7–104(c) provides:

(c) Possessing stolen personal property.—(1) A person may not possess stolen personal property knowing that it has been stolen, or believing that it probably has been stolen, if the person:

(i) intends to deprive the owner of the property;

(ii) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(iii) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

(2) In the case of a person in the business of buying or selling goods, the knowledge required under this subsection may be inferred if:

thefts of the two motorcycles and the van. According to appellant, however, the State failed to meet its burden of proving that these thefts were not part of a single larcenous scheme or course of conduct and, therefore, appellant's thefts should have been deemed as one criminal act under the "single larceny doctrine." Instead, appellant was sentenced to consecutive ten-year sentences for each of the three counts of possession of stolen property.

## A

### Single Larceny Doctrine

The Court of Appeals first recognized the "single larceny doctrine" in *State v. Warren,* 77 Md. 121, 26 A. 500 (1893), and more recently reexamined the doctrine in *State v. White,* 348 Md. 179, 702 A.2d 1263 (1997) and *Kelley v. State,* 402 Md. 745, 756, 939 A.2d 149 (2008). The doctrine evolved as a common law principle which typically arises in three contexts:

(1) whether a count in a charging document alleging that the defendant stole the property of several persons at the same time charges more than one offense and is therefore

_____

(i) the person possesses or exerts control over property stolen from more than one person on separate occasions;

(ii) during the year preceding the criminal possession charged, the person has acquired stolen property in a separate transaction; or

(iii) being in the business of buying or selling property of the sort possessed, the person acquired it for a consideration that the person knew was far below a reasonable value.

(3) In a prosecution for theft by possession of stolen property under this subsection, it is not a defense that:

(i) the person who stole the property has not been convicted, apprehended, or identified;

(ii) the defendant stole or participated in the stealing of the property;

(iii) the property was provided by law enforcement as part of an investigation, if the property was described to the defendant as being obtained through the commission of theft; or

(iv) the stealing of the property did not occur in the State.

(4) Unless the person who criminally possesses stolen property participated in the stealing, the person who criminally possesses stolen property and a person who has stolen the property are not accomplices in theft for the purpose of any rule of evidence requiring corroboration of the testimony of an accomplice.

duplicitous; (2) whether a prosecution, conviction, or sentencing for stealing the property of one person bars, under double jeopardy principles, the prosecution, conviction, or sentencing for having stolen the property of another person at the same time; and (3) whether, when the property of different persons is stolen at the same time, the values of the separate items of property may be aggregated to raise the grade of the offense or the severity of the punishment, to the extent that either is dependent on the value of the property taken.

*White*, 348 Md. at 182, 702 A.2d 1263.

In *Warren*, the Court of Appeals, faced with the first of these fact patterns, answered the question: "Does the stealing of several articles of property at the same time, belonging to several owners, constitute one offense, or as many separate offenses as these different owners of the property stolen?" *Warren*, 77 Md. at 122, 26 A. 500. Although the Court, in its analysis, did not state that its decision was based on the single larceny doctrine, it applied the principle, expositing that "the stealing of several articles *at the same time*, whether belonging to the same person, or to several persons, constituted but one offense." *Id.* (Emphasis added). The *Warren* Court then articulated its rationale, *id.*:

It is but one offense, because the act is one continuous act—the same transaction; and the gist of the offense being the felonious taking of the property, we do not see how the legal quality of the act is in any manner affected by the fact that the property stolen, instead of belonging to one person is the several property of different persons.

The Court cautioned, however, that "the stealing of property *at different times*, whether belonging to the same person or different persons, constituted separate offenses...." *Id.* at 123, 26 A. 500. (Emphasis added); *see Kelley*, 402 Md. at 750, 939 A.2d 149. Subsequent to *State v. Warren*, however, the Court of Appeals had determined that a single charge against a defendant could encompass property stolen at different times. *Delcher v. State*, 161 Md. 475, 483, 158 A. 37 (1932)

(where defendant stole money on several occasions over a two-year period, it was not necessary to charge separate counts "covering each of the items in a series of continuing offenses"); *Horsey v. State*, 225 Md. 80, 83, 169 A.2d 457 (1961) (where defendant stole various items of clothing and accessories on different dates from store where he was employed, the trial court could properly conclude "that the separate takings were pursuant to a common scheme or intent" and that it "is generally held that if they are, the fact that the takings occur on different occasions does not establish that they are separate crimes").

Most recently, in *Kelley*, 402 Md. at 758, 939 A.2d 149, the Court of Appeals reasoned that

a single scheme conceivably may be found where multiple takings from different owners at different locations are in quick and unbroken succession and from a limited area ... [;however, w]here there is a more significant time lapse between the takings ... or they occur from locations that are not in very close proximity, the general rule that the takings are not part of a single scheme or continuing course of conduct should be applied....

This determination "is a factual matter that must be based on the evidence." *Id.* at 756, 939 A.2d 149. The Court of Appeals explained that the burden of proving whether the takings were separate or part of a single scheme rested with the State: "The question, then, is whether the State has sufficiently established beyond a reasonable doubt that there was, or ... was *not*, a single larcenous scheme or course of conduct." *Id.*

## B

### Maryland Theft Statute

The legislature created the theft statute to consolidate, in a single statutory scheme, the various common law larceny related crimes. *State v. Burroughs*, 333 Md. 614, 636 A.2d 1009 (1994). *Acquah v. State*, 113 Md.App. 29, 48, 686 A.2d 690 (1996). Prior to the enactment of the consolidated theft

statute, larceny, receiving stolen goods and related theft offenses were delineated under separate criminal statutes. Maryland's Theft Statute provides several theories, requiring the State to prove different elements under which an accused can be charged. *See* Md.Code Ann. (2002, 2008 Supp.), Criminal Law (C.L.), §§ 7–104, 7–105.[5] Section 7–104(c), entitled "Possessing personal property," provides:

> (1) A person may not possess stolen personal property knowing that it has been stolen, or believing that it probably has been stolen, if the person:
>
> > (i) intends to deprive the owner of the property;
> >
> > (ii) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
> >
> > (iii) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

Appellant postulates that, unlike other versions of theft which require the accused to have actually *taken* the property as part of the theft, § 7–104(c) requires mere *possession* of stolen goods. *Cf.* § 7–104(a) ("person may not willfully or knowingly obtain or exert unauthorized control over property"); § 7–105 ("person may not willfully take a motor vehicle"). Appellant points out that the Court of Appeals has determined that, although one statute encompasses § 7–104(a) and § 7–104(c), an accused cannot "be both the thief and possessor of the same stolen good." *Grant v. State,* 318 Md. 672, 679, 569 A.2d 1237 (1990).

> The single larceny doctrine is codified under C.L. § 7–103:
>
> (f) Course of conduct—Aggregation.—When theft is committed in violation of this part under one scheme or continuing course of conduct, whether from the same or several sources:
>
> > (1) the conduct may be considered as one crime; and

---

**5.** Any reference to "C.L." will be referring to Md.Code Ann. (2002, 2008 Supp.), Criminal Law Article.

(2) the value of the property or services may be aggregated in determining whether the theft is a felony or a misdemeanor.

## C

### Preservation

Prior to sentencing, the circuit court requested the preparation of a pre-sentence investigation. The investigation, submitted by the Division of Parole and Probation (DPP), did not treat the three theft counts separately for sentencing purposes. In its Memorandum in Aid of Sentencing, the State took issue with the DPP's treatment of the theft counts as a single event:

> In reviewing the sentencing guidelines submitted by the [DPP] the State does not agree that they correspond with the calculations as provided by the Maryland Sentencing Guidelines Manual. The manual provides sufficient guidance in calculating multiple criminal events.

> * * *

> The evidence presented during the trial was that the motorcycles and tags were stolen on different days and from different victims at different locations. The convicted offenses for thefts all relate to different victims and different location [sic] as to where the thefts occurred.

Additionally, at the sentencing hearing, the State opposed the manner in which appellant's sentence was calculated in the Memorandum in Aid of Sentencing prepared by DPP:

> Your Honor, as the State has submitted already in their memorandum, in our request to correct the sentencing guidelines that was submitted by the [DPP], the State believes that the individual count that they relate to the (inaudible) of those items, *those are separate criminal events and so, therefore, they should be added and not taken together from the low to high as was suggested by the Parole and Probation agent that submitted the report.*

\* \* \*

I do have a copy, Your Honor, of each guidelines [sic] for each event as separated as is required by the Maryland Sentencing Guidelines Manual showing the (inaudible) of each offense for each one of the criminal events for the separate thefts.

(Emphasis added).

*i*

### The Parties' Contentions

Approximately the first half of the State's appellate brief is devoted to the argument that appellant, by failing to object, has not preserved for appellate review the issue of the court's refusal to apply the single larceny doctrine. The State posits that the DPP concluded that appellant's convictions constituted only one crime; however, appellant's counsel did not object to the State's opposition to the position taken by DPP and failed to otherwise address the issue. The gravamen of the State's position is that, "Because the jury could have found that Webb received the vehicles at different times or places ..., it was appropriate *to sentence* Webb on three separate theft counts." (Emphasis supplied). Appellant likewise concedes, in his brief, that his counsel failed, at sentencing, to object to the trial court's imposition of three separate, consecutive sentences. The trial court, after hearing the State's argument and DPP's findings, determined not to apply the single larceny doctrine. The State maintains that, generally, appellate courts have held that a failure to lodge an objection during sentencing waives the right to appeal the sentence. *See, e.g., Brecker v. State,* 304 Md. 36, 40, 497 A.2d 479 (1985).

The State also relies on *Reiger v. State,* 170 Md.App. 693, 908 A.2d 124 (2006), where we said:

[I]t is the availability of an opportunity to ask for and obtain immediate relief from the sentencing court that determines whether a contemporaneous objection is necessary. Simply

stated, when there is time to object, there is opportunity to correct.

*Id.* at 701, 908 A.2d 124.

The State thus sums up its argument:

To be clear, this is not a case where trial counsel failed to recognize an issue, trial counsel did not object, and the judge made no ruling. The issue was raised and discussed twice—once in the prosecutor's sentencing memorandum, and once at the sentencing hearing itself. Thus, the applicability of the single larceny doctrine to this case *was raised and decided below;* but due to his failure to object, [appellant] has not preserved his claim for review.

Appellant, citing the above excerpt from the State's brief, retorts that we should reject its claim of waiver "[w]here the State concedes the issue was raised in and decided by the trial court." Expounding, he relies on *DeLeon v. State,* 407 Md. 16, 962 A.2d 383 (2008), for the proposition that the primary purposes of the preservation rule are to bring errors to the attention of the trial court so the court has an opportunity to correct them and to prevent piecemeal litigation and aid in the speedy resolution of litigation. The error, he says, "was brought to the attention of the trial court by Parole and Probation, disputed by the State, and then decided by the trial court." Citing *Carter v. State,* 73 Md.App. 437, 443, 534 A.2d 1015 (1988), he maintains that the court, having had the opportunity to consider both sides of the issue before ruling against him, further objection, by his trial counsel would have been futile, and was not required.

He further suggests that our review of the issue on this appeal will obviate the expense of post-conviction review and further the objective of preventing piecemeal litigation and aiding in the speedy resolution of litigation. Capsulizing his argument is the language of Maryland Rule 8–131(a), which he points out, makes no mention of the requirement to object and provides, in the disjunctive, rather than the conjunctive, for appellate review when an issue has been "raised in *or* decided by the court."

*ii*

■ Generally, a party preserves an issue for appeal by interposing an objection—with particularity—on the record. This requirement provides full opportunity for the trial court to evaluate and assess a party's argument. *See DeLeon v. State,* 407 Md. at 21, 962 A.2d 383 (primary purposes of the preservation rule are to bring errors to the attention of the trial court so the court has an opportunity to correct them and to prevent piecemeal litigation and aid in the speedy resolution of litigation). The Court of Appeals, in *Abeokuto v. State,* 391 Md. 289, 326–27, 893 A.2d 1018 (2006), articulated the rationale for the requirement that an objection be interposed to preserve an issue for appellate review:

In *Conyers,* we explained the reasons why we ordinarily do not exercise the discretion to address and decide unpreserved issues:

> The rules for preservation of issues have a salutary purpose of preventing unfairness and requiring that all issues be raised in and decided by the trial court, and these rules must be followed in all cases including capital cases. The few cases where we have exercised our discretion to review unpreserved issues are cases where prejudicial error was found and the failure to preserve the issue was not a matter of trial tactics.

The *Abeokuto* Court added, "We will review the unpreserved claim only where the unobjected to error can be characterized as compelling, extraordinary, exceptional, or fundamental to assure the defendant a fair trial." *Id.*

We deem instructive our prior decisions and decisions by the Court of Appeals, which have considered the preservation issue, in the context of a defendant's claim that his conviction should be merged for sentencing purposes. In *Slye v. State,* 42 Md.App. 520, 522–23, 401 A.2d 195 (1979), a case involving merger, we considered the effect of the imposition of concurrent sentences where the convictions should have been merged:

Examination of the record reveals that appellant's trial counsel moved for a judgment of acquittal at the close of the State's case and stated, in the course of his supporting argument, that "the application of both the grand larceny and grand shoplifting would seem to merge somehow or some way in that aspect." The motion was denied. Appellant did not object thereafter when the trial court submitted both offenses to the jury nor when the jury returned a verdict convicting him under each count nor when the court sentenced him to 10 years for grand larceny and a concurrent three-year term for shoplifting. The State, citing *Rose v. State,* 37 Md.App. 388, 377 A.2d 588, *cert. denied,* 281 Md. 743 (1977), argues that Rule 1085 precludes appellate review of the merger issue when, as here, the sentences imposed were concurrent, not consecutive.

Writing for the Court in *Rose v. State,* Judge Davidson observed:

> This Court will not ordinarily decide any point or question which does not plainly appear to have been tried or decided by the trial court. We have, however, occasionally decided such points or questions. While we have often refused to decide a question of merger which has not been raised or decided in the trial court in cases in which concurrent terms were imposed, *we have not declined to consider such questions in cases in which consecutive terms were imposed. In such cases we shall decide the merger question in order to avoid the manifest injustice which would result if consecutive sentences were imposed for merged offenses.* (Emphasis added.)

37 Md.App. at 393–94, 377 A.2d 588.

Explicating the reasoning underpinning the exception to the requirement that an objection be registered in order to obtain appellate review, we continued in *Slye:*

> The "manifest injustice" rationale enunciated in *Rose* is, we think, clearly applicable to the instant appeal. Here, appellant contends that the larceny conviction, for which he received a sentence of 10 years, should merge into the

shoplifting conviction, for which he received a 3–year term. The latter, it is true, was concurrent. However, if we were not to entertain the merger issue because of Md. Rule 1085, appellant is faced with the prospect of an additional seven years incarceration for an offense which he claims, on the authority of *Newton v. State,* 280 Md. 260, 373 A.2d 262 (1977), should have been merged into the conviction for which he received the lesser, 3–year, sentence. The situation is, in practical effect, indistinguishable from that where consecutive sentences are imposed and considerations of "manifest injustice" are equally present.

In this respect, we deem it appropriate to point out that, upon close scrutiny, the cases wherein we have declined to review the question of merger of concurrent sentences because of Rule 1085, do not involve these considerations. In those cases, unlike the present appeal, the sentence imposed for the conviction proposed to be merged was less than or, at most, equal to the sentence imposed for the other conviction.

Therefore, under the circumstances of this case, we shall decide the merger question.

*Id.* at 524, 401 A.2d 195.

*See, e.g., Brooks v. State,* 38 Md.App. 550, 552, 381 A.2d 718 (1978) (Where appellant had received consecutive sentences of twelve years for assault with intent to murder and three years for carrying a weapon openly with intent to injure, citing *Rose v. State,* 37 Md.App. at 393–94, 377 A.2d 588, we held: "Because appellant was given consecutive sentences, we will consider the issue of merger even though it was not raised or decided below."). *See also Johnson v. State,* 38 Md.App. 306, 316, 381 A.2d 303 (1977); *Colbert v. State,* 18 Md.App. 632, 645, 308 A.2d 726, *cert. denied,* 269 Md. 756 (1973); *Carter v. State,* 15 Md.App. 242, 248, 289 A.2d 837, *cert. denied,* 266 Md. 734 (1972); *Moore v. State,* 15 Md.App. 396, 406, 291 A.2d 73, *cert. denied,* 266 Md. 740 (1972); *Alston v. State,* 11 Md.App. 624, 630, 276 A.2d 225, *cert. denied,* 262 Md. 745 (1971).

In this case, the trial court imposed three ten-year prison sentences, each to run consecutively, for an aggregate of thirty years. Assuming, *arguendo,* that the trial court erred in refusing to apply the single larceny doctrine, the error, under the court's ruling, would result in appellant serving twenty years in excess of what he would have served had he received the benefit of a favorable ruling. Similar to the rationale underpinning the *Slye* and *Rose* decisions, appellate review should be afforded Webb in order to avoid the manifest injustice which would result if consecutive sentences were improperly imposed. *Slye,* 42 Md.App. at 524, 401 A.2d 195.

Moreover, the State is not unduly prejudiced in the case *sub judice* because the State was not deprived of the opportunity to present evidence on whether the single larceny doctrine should have been applied since the issue does plainly appear by the record to have been raised in or decided by the trial court. *See Fitzgerald v. State,* 384 Md. 484, 505–06, 864 A.2d 1006 (2004) (Permitting the appellant to raise the issue of whether canine's ability to detect diazepam tablets renders his sniff a search for the first time on appeal would undermine the purposes behind Rule 8–131, *i.e.,* "it would prejudice unfairly the State, because the State did not have the opportunity to present evidence on this complex issue.").

Contrary to what occurs most often, here, the State insists that it is the very fact that the issue *was* raised *and* decided below which imposed a heavier burden on appellant to object, which should operate to preclude appellate review of the court's refusal to apply the single larceny doctrine. The State emphasizes in its brief, "This is not a case where trial counsel failed to recognize an issue, trial counsel did not object, and the judge made no ruling."

As appellant concedes, his trial counsel did not object to the trial court's ruling. DDP, however, in its pre-sentence memorandum and at the sentencing hearing, had articulated the precise position which appellant now embraces and the State, at that hearing and in its pre-sentence memorandum, argued against the position taken by DDP. The court, having consid-

ered the pre-sentence memorandum of the State and DDP, decided the issue averse to appellant. Patently, the precise issue for which appellant now seeks appellate review was raised *and* was decided by the trial court. Accordingly, the requirement "that counsel bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings," *Fitzgerald,* 384 Md. at 505, 864 A.2d 1006, was achieved in this case, albeit by a third-party, DDP, in its Memorandum in Aid of Sentencing. That the court would have ruled differently had appellant's counsel added his voice to DDP's Memorandum in Aid of Sentencing is nowhere evident from the record.

In *Smith v. State,* 394 Md. 184, 201, 905 A.2d 315 (2006), the appellant's counsel revealed allegedly privileged information to the trial court and the judge repeatedly stated that her determination concerning Smith's Fifth Amendment rights "was based upon the proffer of the State and [Smith's counsel]'s statement that, after consulting with his client, he didn't believe he had a Fifth Amendment privilege." Noting the Court had held in *Newman v. State,* 384 Md. 285, 863 A.2d 321 (2004) that "only the client has [the] power to waive the attorney-client privilege," and that (quoting *Harrison v. State,* 276 Md. 122, 138, 345 A.2d 830 (1975)), "intrinsic to the definition of 'waiver' is the recognition that the client must be informed of both the scope and nature of the right being relinquished as well as the consequences of so doing," the Court of Appeals held that Smith's case was one of the rare instances in which delving into the tactics and strategies of defense counsel in a collateral proceeding would be pointless.

In the present case, as we have determined *infra,* Smith's counsel had an inherent conflict of interest between his duties to Smith and his asserted duties to the trial court. As such, Smith's attorney could not impartially advise him regarding any waiver of the attorney-client privilege because the trial court had an interest in learning counsel's advice to Smith. Thus, regardless of whether Smith waived his attorney-client privilege either expressly or implicitly, the waiver would be ineffective. *Moreover, we can conceive*

*of no circumstances that would require Smith's counsel to reveal the substance of his advice to the court, as such a disclosure could only inure to his client's detriment. Therefore, we conclude that a collateral evidentiary hearing concerning Smith's counsel's disclosure would be superfluous.* Our refusal to address Smith's claim on direct appeal would constitute a waste of judicial resources. *See In re Parris W.,* 363 Md. at 727, 770 A.2d 202.

*Id.* at 201, 345 A.2d 830 (emphasis added).

It may be that, having been present when the Memorandum in Aid of Sentencing was submitted to the court by DDP, and the State presented its argument in opposition thereto, counsel might well have considered it futile, after the court ruled, to argue further. Such a consideration, however, would not relieve counsel of the obligation to pursue a justiciable issue on his client's behalf. Appellant's counsel, rather than enter the fray, sat on the sideline as an observer, while DDP was recommending that the court impose a ten-year sentence and the State was arguing that his client should receive a thirty-year sentence. There is no conceivable legal theory or tactical advantage that would be explicative of how failure to join in the argument that the court should impose a ten-year sentence, rather than a thirty-year sentence, could be in his client's best interests. Stated otherwise, there was absolutely no downside to a zealous argument in favor of treating his convictions as a single transaction. Manifestly, the failure to present argument constituted ineffective assistance of counsel. As was the case in *Smith,* our refusal to address appellant's claim on direct appeal would constitute a waste of judicial resources. *Id.*

Finally, in *Wilkins v. State,* 343 Md. 444, 447, 682 A.2d 247 (1996), a case in which the appellant's two handgun convictions were based upon the same acts or transaction, and appellant failed, in the circuit court, to object to separate sentences for use of a handgun in a commission of a felony, the Court of Appeals, in answering the question of whether this Court erred in refusing to order merger of the sentence for wearing or carrying a handgun, opined:

On numerous occasions this Court has pointed out that "'illegal sentences may be challenged at any time, even on appeal,'" *Spitzinger v. State,* 340 Md. 114, 122, 665 A.2d 685, 688–689 (1995), quoting *Campbell v. State,* 325 Md. 488, 509, 601 A.2d 667, 677 (1992). *See, e.g., Jordan v. State,* 323 Md. 151, 161, 591 A.2d 875, 880 (1991) (even though the defendant did not raise the issue at trial, "Jordan has not waived his right to object to the unlawful sentence"); *Osborne v. State,* 304 Md. 323, 326 n. 1, 499 A.2d 170, 171 n. 1 (1985) ("where the trial court has allegedly imposed an illegal sentence, the issue may be reviewed on direct appeal even if no objection was made in the trial court"); *Matthews v. State,* 304 Md. 281, 287–288, 498 A.2d 655, 658 (1985); *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949, 951 (1985).

Consequently, Wilkins's separate sentence for wearing or carrying a handgun should be vacated.

In light of the foregoing, we shall exercise our plenary discretion to review the propriety of the trial court's refusal to apply the single larceny doctrine.

## D

### Possession of Stolen Property

■ Appellant argues that, pursuant to *Warren* and its progeny, discussed *supra,* appellant can be charged with only one crime of felony theft. In support of that assertion, appellant argues that our sister jurisdictions have specifically held that, where a defendant is convicted of possession of stolen goods at the same time and place, he has committed but one criminal act under the single larceny doctrine. *See Beaty v. State,* 856 N.E.2d 1264, 1274 (Ind.App.2006) ("By simple extension, ... if a defendant *receives* several items of stolen property, knowing the property to be stolen, at the same time and the same place, he has committed but one criminal act, regardless of whether the items he received belonged to several owners or were the subject of more than one theft."); *People v. Loret,* 136 A.D.2d 316, 317, 526 N.Y.S.2d 872 (1988) (holding that "possession at one time and place of several

items taken in separate thefts from various owners is but one crime of criminal possession of stolen property"); *State v. Bair*, 671 P.2d 203, 206 (Utah 1983) (determining that, where the evidence shows that stolen articles were all received on one occasion, the receipt is considered a single offense and must be prosecuted as one crime); *State v. Reisig*, 128 Ariz. 60, 623 P.2d 849, 851 (1980) (holding that a defendant who possessed nine articles of property can only be convicted of one count of possession).

◼ The single larceny doctrine, we conclude, is applicable to the crime of "Possessing personal property." § 7–104(c). Notably, in many of the theft cases in which the single larceny doctrine is implicated, cited *supra*, it is the State that is attempting to aggregate various thefts of smaller items in order to exceed the $500 threshold to establish felony theft. In those instances, the State had the burden of establishing "beyond a reasonable doubt that there was ... a single larcenous scheme or course of conduct." *Kelley*, 402 Md. at 756, 939 A.2d 149. In the case *sub judice*, however, the opposite scenario is presented. Appellant is contending that the single larceny doctrine requires aggregation of his three charges for felony theft. Notwithstanding this role reversal, the State retains the burden of establishing "beyond a reasonable doubt that there ... *was not* [ ] a single larcenous scheme or course of conduct." *Id.* (Emphasis added).

◼ We agree with our sister jurisdictions, *supra*, that, by "simple extension," if a defendant comes into possession of multiple items of stolen property in rapid and unbroken succession, he has committed but one criminal act, regardless of whether the items in his possession belonged to multiple owners or were the subject of multiple thefts. *See Beaty*, 856 N.E.2d at 1274. Appellant was charged with three counts of felony theft and, thus, the State had the burden of proving that the three alleged felonies were not part of the same scheme or course of conduct. *See Kelley*, 402 Md. at 756, 939 A.2d 149.

The State contends that appellant's argument relating to the single larceny (1) "rests entirely upon the erroneous

assumption that the jury's verdict is inconsistent unless it is interpreted to mean that [appellant] did not commit 'theft by taking' " and (2) fails to take into account that the evidence produced at trial indicated that the "van and motorcycles were received at different times and places, and/or that [appellant] knew that they were stolen at different times and places."

*i*

### Inconsistent Verdicts

■ The State postulates that it is possible for the jury to have found appellant guilty of "possession" of stolen property and not guilty of "motor vehicle taking," without concluding that appellant did not take the vehicles. According to the State, because the offenses of taking a motor vehicle and theft have different elements and because appellant's defense on the motor vehicle counts was intended to refute an element not shared by the theft counts, the two verdicts are compatible. Moreover, even if the two verdicts are deemed inconsistent, juries in Maryland are permitted to return inconsistent verdicts in criminal cases, which are tolerated because of the historic role that the jury plays in our justice system and because " 'inconsistences may be the product of lenity, mistake or a compromise to reach unanimity.' " *See Price v. State,* 405 Md. 10, 24, 29, 949 A.2d 619 (2008) (quoting *Galloway v. State,* 371 Md. 379, 406, 809 A.2d 653 (2002)).

The motor vehicle theft statute, C.L. § 7–105(a), defines "Owner" as one "who has a lawful interest in or [is] in lawful possession of the motor vehicle by consent or chain of consent of the title owner." By contrast, C.L. § 7–101(h) defines "Owner," in part, as one "who has an interest in or possession of property *regardless of whether the person's interest or possession is unlawful . . . .*" (Emphasis added). Because C.L. § 7–104 is subject to the definition of owner pursuant to C.L. § 7–101, the owner of a vehicle need not have a lawful interest or lawful possession of the property in order to obtain a conviction. At trial, appellant argued that the van did not belong to the party named in his indictment. The State

contends that some or all of the jurors may have acquitted appellant of the motor vehicle taking count involving the van, not because they did not believe appellant had taken the van, but rather, because they agreed with appellant's contention that the named party in the indictment was not the *owner* of the van as is required pursuant to C.L. § 7–105(a). Likewise, for the counts relating to the "taking" of the motorcycles, appellant, at trial, argued that the testimony provided by the motorcycle owners was unreliable and did not establish lawful interest, possession or lack of consent and, thus, according to the State, the jury may have acquitted appellant of the charges of "taking" the motorcycles because of the owners' questionable testimony and not because they believed appellant did not "take" the motorcycles.

The State's argument is without merit. Stated differently, the State contends that, even though there is no evidence that the jury believed appellant had taken the vehicles, because at least some jury members *may* have believed appellant took the vehicles at different times, application of the single larceny doctrine is improper. The State is correct that inconsistent verdicts are not proscribed in Maryland, but this precept does not relieve the State of its burden of proof at trial, discussed *supra.* The State's reliance on what some jurors *may have believed* is both unsupported by both the law and the facts. The only evidence adduced at trial connecting appellant to the stolen property was that appellant was arrested while simultaneously in possession of stolen property following police surveillance and pursuit. Other than discussing appellant's possession of the stolen property, the State has failed to provide any facts or findings that establish that appellant had taken the stolen property. Instead, the State speculates as to the jury's deliberations and how it reached its verdict, which is not legally cognizable.

*ii*

### Receipt and Knowledge

The State next contends that, even if appellant were correct that the jury conclusively found that he was not the person

who "took" the vehicles, the single larceny doctrine still does not require merger in this case. Although appellant refers to C.L. § 7–104(c) by its common moniker, "theft by possession," the section also includes the crime of receiving stolen property. *See Burns v. State*, 149 Md.App. 526, 549, 817 A.2d 885 (2003). According to the State, the evidence indicated that the receipt of the stolen property occurred at different times and different places, thus precluding application of the single larceny doctrine. The State further argues that one of the cases cited by appellant, *Beaty*, 856 N.E.2d at 1272, provides that, "if a defendant receives items of stolen property, *knowing the items to be stolen, at separate times or separate places*, he has committed separate criminal acts." (Emphasis added).

The State posits that the evidence "supports a finding that [appellant] received the Ford van and the two motorcycles at different times or in different places and/or that he knew that they were stolen at different times or different places." In support of that assertion, the State relies upon the evidence that it asserts indicates the items were stolen at different times and places from different owners, *i.e.*, (1) the broken van ignition switch, enabling the van to be started without a key, hence the inference that it was taken prior to the motorcycles, (2) wheel locks on some of the motorcycles in the van, evidencing the owners' attempts to safeguard parked motorcycles against theft, (3) the set of Maryland registration plates in the van and the stolen registration plates on the van itself and (4) the facts that each motorcycle in the van had a cover and there were additional unused covers in the van.

The State attempts to distinguish the authority cited by appellant in his brief, arguing that the decisions on which appellant relies address different factual scenarios, legal issues and statutory schemes. According to the State, *Bair, supra,* is distinguishable because, unlike the case *sub judice,* the evidence conclusively demonstrated that the defendant did not receive the stolen items at different times. Furthermore, the

*Bair* decision arose out of Utah's "single criminal episode" statute, for which Maryland has no analog. *Id.* at 207. *See* Utah Code Ann., §§ 76–1–401–403 (1953). Additionally, the State argues that, unlike the instant case, *Loret,* 136 A.D.2d 316, 526 N.Y.S.2d 872, addressed criminal possession without contemplating "receipt of stolen property."

The crux of the State's argument is that, "[b]ecause the jury could have found that [appellant] *received* the vehicles at different times or places, or *that he knew* they were taken at different times or places, it was appropriate to sentence [appellant] on three separate theft counts." (Emphasis added). For the same reason that the State's argument in the previous section fails, so too does this argument fail. The State, as we noted, *supra,* provides mere speculation as to what the jury considered during its deliberations, which is not legally cognizable. Simply positing what the jury "could have" found, without more, is insufficient to uphold a conviction. More problematic is the State's argument that, although the State references evidence that indicates that the vehicles were stolen at different times from different owners, it has failed to provide *any* evidence that appellant *received* the stolen vehicles at different times. The evidence on which the State relies fails to connect appellant with the actual *taking* of the vehicles and provides no basis by which to conclude that appellant received the stolen items at different times. Moreover, there is no evidence that appellant's knowledge—if in fact he had knowledge—that the property was stolen at different times has any bearing on his convictions. Appellant is charged with "possession" of stolen property rather than "knowing" that the property was stolen at different times. Even if appellant knew that the items were stolen at different places from different owners, so long as appellant came into possession of those stolen items at the same time, he has committed a single act.[6]

We have concluded from our review of the record and the transcript of the trial proceedings that the State failed to

---

6. The State's entire argument, which focuses on "receipt," as opposed to "possession," of stolen property pursuant to C.L. § 7–104, is unsus-

establish that appellant was guilty of multiple felonies. To the contrary, the evidence indicated that the police witnessed appellant in possession of three stolen items at the "same place and time." Although evidence indicates that the vehicles were stolen at different times, the State provided no evidence that appellant's possession of the property was preceded by his theft or knowledge of the theft of the property; the jury properly acquitted appellant of these charges. The police observed appellant enter a stolen van that contained stolen motorcycles, which was sufficient to establish only that appellant was in simultaneous possession of the stolen property. Lest there be any misapprehension of the reach of this opinion, the indispensable lynchpin of our decision that the single larceny doctrine should have been applied is that the credible evidence supported only that appellant, at a discrete point in time, was unlawfully in *possession* of the stolen property and not that he was the thief. In other words, only the point in time when the possession occurred was established. No evidence was adduced at trial that indicated that appellant came into possession of the stolen property at different times. Consequently, application of the single larceny doctrine constrains the conviction of one count of felony theft.

Accordingly, appellant was improperly convicted and sentenced for three separate felonies.

## II

■ Appellant contends that the trial judge provided the jury with "a general advisory jury instruction." Midway

tainable in light of the jury instructions provided by the trial court. The term "receive" or "receipt" does not appear in a single instance in the jury instructions provided to the jury. Conversely, the term "possess" or "possession" appeared on fourteen occasions. To be sure, a few of those instances did not pertain to the thefts of the van and two motorcycles, but such is indicative that possession and not *receipt* of the stolen property was the essence of the charges against appellant. The State did not request that the jury be instructed on "receipt" of stolen property, nor did it present argument or evidence at trial under the theory it argues on appeal.

through the jury instructions, the trial judge charged the jury that, in regard to the jury instructions, "You can review them individually or collectively to determine what, *if any*, significance you give to these instructions and what, if any differences you see." (Emphasis added). Appellant argues that the terms "if any" violated his right to due process pursuant to the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights by informing the jury that it could disregard the law "in its entirety" if it wished. Essentially, according to appellant, this "general advisory instruction is especially prejudicial because it permits the jury to disregard such fundamental rights as the presumption of innocence and burden of proof beyond a reasonable doubt."

We have held that errors in jury instructions, including improper instructions, must be objected to before appellate review will be exercised. *See Guardino v. State*, 50 Md.App. 695, 702–03, 440 A.2d 1101 (1982); *Middleton v. State*, 49 Md.App. 286, 292, 431 A.2d 734 (1981). Appellant concedes that his counsel failed to properly object to the alleged advisory instruction; however, he argues that this circumstance warrants our discretion to overlook failure to preserve where the error is "compelling, extraordinary, exceptional or fundamental." *Hutchinson*, 287 Md. at 203, 411 A.2d 1035.

Appellant's argument is without merit. The trial judge provided the jury with written and oral jury instructions, in which the oral instructions constituted fifteen pages of transcript. Appellant's argument focuses on two words on page twelve of the jury instructions; however, the very first instruction provided to the jury advised that the jury was not free to disregard the judge's instructions on the law: "Members of the jury, the time has come to explain to you the law that applies to this case. The instructions that I give to you about the law are binding upon you. In other words, you must apply the law as I explain it to you in arriving at your

verdict." [7]

Maryland appellate courts have consistently rejected requests for plain error review of unobjected-to instructions. *See, e.g., State v. Adams,* 406 Md. 240, 322–23, 958 A.2d 295 (2008) (rejecting plain error review of advisory jury instructions, in part, because "the fact that an error was 'plain' does not excuse waiver"); *Stevenson v. State,* 289 Md. 167, 172–73, 423 A.2d 558 (1980) (declining plain error review of advisory jury instructions where defendant had preserved general objection pursuant to Fourteenth Amendment, but lodged no objection to specific instructions); *Simms v. State,* 52 Md.App. 448, 455, 449 A.2d 1196 (1982) (declining plain error review of instruction that the court's charge was "advisory only"); *Scarborough v. State,* 50 Md.App. 276, 281, 437 A.2d 672 (1981) (declining to exercise discretionary review over unpreserved allegation of error regarding advisory jury instruction). Appellant failed to properly object or except to the jury instructions at trial. We are not presented with "compelling, extraordinary, exceptional or fundamental" circumstances that warrant our invocation of plain error review.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED; CASE REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT OF CONVICTION FOR A SINGLE LARCENY AND TO RESENTENCE APPELLANT ON THE SINGLE LARCENY COUNT.**

**COSTS TO BE PAID BY HOWARD COUNTY.**

---

7. The jury instructions included various, alternative theories of criminal liability. It is conceivable that the trial judge was not indicating that the jury instructions were "advisory," but rather, that the jurors were permitted to assess the alternate theories of liability and determine on which theory they would rely in their deliberations.