In re John M. SPIRIDON, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 96–BG–1409.**

District of Columbia Court of Appeals.

Argued April 6, 2000.

Decided July 13, 2000.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda for the Board on Professional Responsibility.

Leigh M. Manasevit, Washington, DC, for respondent.

Before TERRY, STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Respondent was convicted in Maryland of misdemeanor theft of eighteen dollars. The Board on Professional Responsibility (Board) recommends that he be suspended for one year, with a requirement to show fitness before reinstatement pursuant to D.C. Bar R. XI, § 16 (2000). The Board unanimously concluded, as had the Hearing Committee, that respondent violated Rule 8.4(b) of the D.C. Rules of Professional Conduct, but did not commit an "offense involving moral turpitude" within the meaning of D.C.Code § 11–2503(a) (1995). Bar Counsel takes exception and urges that respondent be disbarred under the statute. On the particular facts of this case, we adopt the Board's recommendation.[1]

## I.

Respondent was admitted to our Bar in June 1991 and the Maryland Bar in 1992, but has never actually practiced law. In 1995, respondent was employed for the summer as a night bus driver in Ocean City, Maryland. On August 10, an undercover police detective and another person boarded the bus respondent was driving. Each paid with a marked bill, and respondent placed both fares in a bag next to his seat. (He presumably should have placed them in the ticket money box.) The detective and his companion then observed respondent do the same with other fares as passengers boarded. The detective eventually exited the bus to meet a patrol car, but his companion remained on board and saw respondent remove several dollars from the ticket money box and place them in his pocket.

At the end of the route, the detective approached respondent and directed him to get off the bus, at which time respondent immediately confessed and offered to make amends. The detective seized $18 from him, including the marked bills, and placed him under arrest. On February 12, 1996, respondent pled guilty to theft, MD. CODE ANN., CRIMES & PUNISHMENT § 27–342 (1995), a misdemeanor since less than $300 was involved. *See id.* § 27–342(f)(2). At the plea hearing, respondent admitted that the August 10 incident was not an isolated event, but maintained that the total amount he took was $18. He was ultimately sentenced to sixty days imprisonment, suspended except for seven days, and placed on supervised probation for eighteen months. He was also fined $500, ordered to pay certain costs, and ordered to perform 100 hours of community service.

On September 26, 1996, respondent was indefinitely suspended by consent in Maryland. As a result, on November 4, 1996, this court ordered respondent suspended pending final disposition pursuant to Bar Rule XI, § 11(d), and he has remained suspended in this jurisdiction since that date. On December 19, 1996, this court

---

1. "In determining the appropriate order, the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g). Respondent concedes that the discipline recommended by the Board is appropriate.

issued a separate interim suspension order pursuant to Bar Rule XI, § 10(c), after receiving a certified copy of the conviction itself. On March 13, 1997, the Board concluded that respondent's crime did not involve moral turpitude *per se* since it was a misdemeanor, *see In re McBride*, 602 A.2d 626 (D.C.1992)(en banc), and therefore referred the matter to a hearing committee.[2]

Based on the facts developed at the hearing, the Board agreed with the Hearing Committee that respondent's crime did not involve moral turpitude within the meaning of D.C.Code § 11–2503(a). The Board first noted that respondent was not a practicing attorney at the time of the incident and that the theft was of very little money. The Board specifically concluded that there was "no evidence ... that Respondent's criminality was a more extensive enterprise that deprived the Ocean City Department of Transportation of substantially more than $18." The Board also focused on respondent's mental state at the time of the offense.[3] Evidence from two doctors was presented at the hearing: Dr. Eugene Bautista, who began providing mental health counseling to respondent in August 1995, and Dr. Richard Ratner, an expert in forensic psychiatry who examined respondent in August 1997 at Bar Counsel's request. Dr. Bautista indicated that respondent was affected by extreme stress, depression, and alcohol abuse when the incident took place. Dr. Ratner diagnosed respondent as a suffering from schizoaffective disorder, alcohol abuse, and adjustment disorder with mixed anxiety and depressed mood; termed him a "significantly disturbed individual"; and testified that respondent engaged in "self-defeating behavior." Dr. Ratner concluded that respondent's mental state at the

time of the offense was consistent with his diagnostic impressions.

Respondent also testified about some specific factors contributing to his mental state at the time of the offense, leading the Hearing Committee to conclude that he was in a "downward spiral" at the time because his father was ill, his relationship with his fiancee was in trouble, he could not find a job in the legal field, and he was suffering from alcohol abuse. Noting the Hearing Committee's conclusion that "[r]espondent's actions were clearly caused by his deep seated personality disorders," and suggesting that respondent's "self-defeating behavior" might have been a motivating factor in his stealing the money as he did, the Board found similarities to *In re Kent*, 467 A.2d 982, 984 (D.C.1983), in which a mentally ill attorney blatantly shoplifted out of a "neurotic desire to be caught rather than a desire for personal profit."

Under the totality of the circumstances, the Board concluded that respondent's crime did not involve moral turpitude under § 11–2503(a), but that his actions did violate Rule 8.4(b) of the D.C. Rules of Professional Conduct, which states that it is professional misconduct for a lawyer to "[c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Based on the foregoing conclusion, the Board recommends that respondent be suspended for one year with a requirement that he show fitness before reinstatement pursuant to D.C. Bar R. XI, § 16.

## II.

The principal issue we are called upon to resolve in this matter is a legal one. As

---

2. While this matter has been pending, respondent has also been disciplined for this matter by the U.S. Tax Court, in which he is admitted to practice. The discipline consisted of a letter of admonition.

3. Respondent does not contest that he had the necessary intent to commit the crime, *i.e.* the intent to deprive the rightful owner of property. *See* MD.CODE ANN., CRIMES & PUNISHMENT § 27–342(a)(1). Any attempt to refute this element of the offense would be unavailing under D.C. Bar R. XI, § 10(f) (1999), which states that a criminal conviction is "conclusive evidence of the commission of that crime in any disciplinary proceeding based thereon."

we understand it, it is Bar Counsel's position in essence that when a misdemeanor involves an element which would render the offense moral turpitude *per se* if a felony, it is improper for the Board to consider what Bar Counsel calls "mitigating factors." Thus, Bar Counsel argues, since respondent was convicted of misdemeanor theft, which in Maryland differs from felony theft only in the value of the property stolen, and a conviction of either type of theft requires proof of a specific intent to steal, which we have held in previous felony cases to evidence moral turpitude *per se*, we should conclude that there is moral turpitude here. We are unable to reconcile this inflexible approach with our *en banc* holding in *McBride, supra*, which is binding on this panel.

Pursuant to D.C.Code § 11–2503(a), an attorney convicted of an offense involving moral turpitude must be disbarred. In *In re Colson*, 412 A.2d 1160 (D.C.1979)(en banc), this court crafted the procedure for the Board to follow in determining whether a particular crime involves moral turpitude. Specifically, the Board is to look first to the elements of the offense to determine whether the crime is one of moral turpitude *per se*. *Id.* at 1164. If so, the inquiry ends and disbarment is automatic. If not, a hearing committee must examine the facts and circumstances of the crime to determine whether it involved moral turpitude. *Id.* at 1165.

■ In *McBride*, however, this court held that "no conviction of a misdemeanor may be deemed a conviction of a crime involving moral turpitude *per se*," 602 A.2d at 629, reasoning:

[I]f society, through its elected representatives in the legislature, has determined that particular conduct, though criminal, is not serious enough to warrant punishment beyond the misdemean-

or range, we believe it is inconsistent with that judgment to hold that a statute punishing that conduct may nonetheless reflect a crime involving moral turpitude *per se, i.e.*, in every application, without regard to the circumstances.

*Id.* at 633. *McBride* and subsequent decisions applying it make clear that, when a misdemeanor conviction is at issue, it is not enough to look solely to the elements of the offense to determine moral turpitude, even if the offense would involve moral turpitude *per se* were it a felony. *See, e.g., id.* at 635 ("But we cannot find moral turpitude merely by reference to the elements of [the offense]. We therefore remand the case to the Board to conduct a full hearing to consider the circumstances of the transgression...."); *In re Untalan*, 619 A.2d 978, 979 n. 2 (D.C.1993)("The practical effect of the *McBride* decision, as pertaining to misdemeanors, is that the Board must conduct a hearing to determine whether the attorney's conduct under the particular circumstances, rather than the crime itself, involves moral turpitude."). Accordingly, in the instant case, the Board was not only permitted but required to hold a hearing to determine whether respondent's conduct involved moral turpitude under all the facts and circumstances found at that hearing.

■ Of course, the question then arises *which* particular "circumstances of the transgression," *McBride, supra*, 602 A.2d at 635, are appropriate for consideration by the Board. One approach would be to permit examination solely of the events directly relating to the crime itself, that is, how the crime was committed. The difficulty is that, in a case like the instant one where the elements of the misdemeanor and felony are identical, such an approach would effectively eliminate the individualized examination that *McBride* mandates.[4]

---

**4.** We limit ourselves here to misdemeanors. Determinations that certain felonies do not *per se* involve moral turpitude are often, perhaps generally, based on a determination that the relevant statute is capable of violation in

ways that would not constitute moral turpitude. Hence, the examination of the circumstances of the particular violation is to determine whether the offense as committed fell

We think therefore that *McBride* permits a broader examination of circumstances surrounding commission of the misdemeanor which fairly bear on the question of moral turpitude in its actual commission, such as motive or mental condition. To use the homely example, a theft of a loaf of bread to feed one's starving children may be moral turpitude *per se* if society deems it an unexcused felony offense, but if society has deemed it only a misdemeanor, then for *McBride* purposes the motive can be taken into account.

This conclusion is not inconsistent with our decision in *In re Hopmayer*, 625 A.2d 290 (D.C.1993). *Hopmayer* involved an attorney convicted of a felony involving moral turpitude *per se* who argued that his alcoholism should be taken into account to mitigate the otherwise mandatory disbarment. *Id.* at 290. Interpreting § 11–2503(a), this court held that, once it is determined that an attorney has been convicted of an offense involving moral turpitude, disbarment is mandatory, regardless of any mitigating circumstances such as alcoholism. *See id.* at 292. Although *Hopmayer* involved an offense involving moral turpitude *per se*, we noted that the same result would follow if the offense were one deemed to involve moral turpitude on its facts after a hearing, as in *McBride*. *See id.*

In the instant case, though, there has been no finding of moral turpitude, and so disbarment is not mandatory as it was in *Hopmayer*. In other words, whereas *Hopmayer* precludes consideration of mitigating circumstances after a determination of moral turpitude has been made, *McBride* leads us to the inescapable conclusion that some "mitigating factors" may be considered in making the determination in the first instance whether moral turpi-

tude existed on the facts of a particular case. Indeed, in *Hopmayer* itself, we took note of the earlier case of *Kent, supra*, in which this court suspended an attorney for thirty days after she was convicted of the misdemeanor offense of taking property without right. It appears that the Board took the position in *Kent, supra*, 467 A.2d at 982, (long before our *McBride* decision) that this offense might or might not involve moral turpitude depending on the particular facts of the case, and that on the facts of Kent's case it did not.[5] We adopted their recommendation, noting "the unusual facts and circumstances" of the case, *id.* at 984, including that the attorney was suffering from "severe transient emotional distress" and had a prior history of emotional problems, *see id.* at 983, and that she was motivated by a "neurotic desire to be caught rather than a desire for personal gain," *id.* at 984.

Bar Counsel argues that, unlike *Kent*, it was clearly established here that respondent took the money for "personal gain." In fact, the Maryland statute imposes no such requirement but rather provides that the defendant have "the purpose of depriving the owner of the property." *See* Md. Code Ann., Crimes & Punishment § 27–342(a)(1) Given the Board's findings, we cannot confidently conclude that respondent took the money for "personal gain," as opposed to taking it in whole or in part as a result of "self-defeating behavior" consistent with his psychological problems.

This is not to say that all "mitigating factors" are relevant to the determination of moral turpitude. For example, certain "mitigating factors" sometimes considered in determining the appropriate sanction for an ethical violation, such as absence of a previous disciplinary record and expression of remorse,[6] would be totally irrele-

within the type of violation that did indeed involve moral turpitude.

5. The Board was considering the question of moral turpitude as used in a then-existing disciplinary rule, not in the statute. *See Kent, supra*, 467 A.2d at 983.

6. *See, e.g., In re Dunietz*, 687 A.2d 206, 212 (D.C.1996)(taking into account that respondent "did not irretrievably prejudice his client ... was remorseful for his misconduct, had no prior disciplinary infractions, acknowledged his misconduct, and compensated his

vant to whether a crime involved "moral turpitude" on its facts. The inquiry must be limited to circumstances bearing on whether, in the words of the statute, the attorney was convicted of an "offense involving moral turpitude." We think that, as a matter of legal interpretation of the disbarment statute, the Board limited itself in this case to factors permissibly considered under the statute as interpreted in *McBride*.

## III.

We turn then to the Board's conclusion that, under the facts and circumstances here, respondent did not commit an offense involving moral turpitude. We do not understand *McBride* to suggest that, where a misdemeanor is involved, it is easy for a convicted attorney to establish lack of moral turpitude. This is especially so where the crime would involve moral turpitude *per se* were it a felony. *See In re Caplan*, 691 A.2d 1152, 1152 (D.C.1997)("Criminal offenses involving theft and fraud inherently involve moral turpitude."). As Bar Counsel points out, this court recognized in *McBride* itself that "the circumstances surrounding the commission of any crime involving intent to defraud would have to be exceptional to warrant the conclusion that moral turpitude was not involved," 602 A.2d at 635, and we have only found such "exceptional" circumstances in one case since then. *See In re McBride (II)*, 642 A.2d 1270, 1273 (D.C.1994)(finding that attorney convicted of fraud-related misdemeanor did not commit crime of moral turpitude where his actions were "misguided" but "intended to help a friend" and "not motivated by a desire for personal gain"). *Cf. In re Sneed*, 673 A.2d 591, 594 (D.C.1996)(finding that attorney who received almost $4000 for "actively participat[ing] in a scheme involving intentional dishonesty for

personal gain" had committed crime of moral turpitude); *Untalan, supra*, 619 A.2d at 979 (finding that attorney who engaged in a "classic scam ... effected for respondent's personal gain" of $500,000 had committed crime of moral turpitude).

■ The proper result here is by no means obvious. In general, when reviewing Board recommendations, we accept the Board's findings of facts if supported by substantial evidence, and adopt the recommended sanction unless to do so would foster inconsistent dispositions or otherwise be unwarranted. *See supra* note 1. Whether appellant's offense constitutes moral turpitude within the meaning of the statute is a question of law though, committed to this court. *See Sneed, supra*, 673 A.2d at 593. Nonetheless, we recognize that such question ultimately goes to whether respondent's conduct "offends the generally accepted moral code." *See Colson, supra*, 412 A.2d at 1168. Once one accepts that conduct deemed criminal by a society nonetheless may or may not involve moral turpitude, the determination becomes intensely specific to the particular facts and circumstances. Furthermore, the inquiry must be cognizant of its purpose: to determine whether the conviction of the offense in question rises to such a level that the legislature would have intended as a consequence the automatic disbarment of the attorney in question.

■ Here, we are presented with a unanimous determination by both the Hearing Committee which heard respondent testify and the Board that the facts and circumstances surrounding the commission of the offense at issue indicate that it is not one involving moral turpitude within the meaning of that term as set forth in *Colson, supra*. We are also dealing with a very small amount of money and a statute that makes it clear that the amount of money involved does matter,

client and his former firm for losses suffered as a result of the neglect)"; *In re Bernstein*, 707 A.2d 371, 377 (D.C.1998)(citing clinical depression, "expressing remorse, voluntarily

compensating the client, or merely acknowledging that one has committed misconduct" as mitigating factors).

indeed is a crucial consideration. *See* MD. CODE ANN., CRIMES & PUNISHMENT § 27-342(f) (providing that the only difference between felony theft and misdemeanor theft is the amount stolen relative to $300); *see also McBride, supra,* 602 A.2d at 633 (recognizing the relevance of legislative treatment). Finally, although the Board did not make a specific finding on the issue, there is a significant suggestion in the record that respondent's actions were not so much motivated by a desire for personal gain as by psychological disturbances more closely akin to those at issue in *Kent, supra.*

All in all, this case presents a close and difficult question, and no one factor present in it is so "exceptional" that it alone would establish a lack of moral turpitude to our satisfaction. However, given the totality of the facts and circumstances found to exist and the unanimous view of all those who have previously sat in judgment on this case, we are prepared to accept the Board's conclusion that the offense did not involve moral turpitude and to adopt its recommended sanction. The requirement to show fitness in particular will ensure that respondent, who has never practiced law, is both qualified to do so and fully rehabilitated before reinstatement. *See In re Robinson,* 736 A.2d 983, 984 n. 1 (D.C.1999)(discussing requirement).[7]

Accordingly, it is ORDERED that respondent, John M. Spiridon, is hereby suspended from the practice of law in the District of Columbia for a period of one year, effective November 22, 1996,[8] with reinstatement to be conditioned on a show-

ing of fitness pursuant to D.C. Bar R. XI, § 16.[9]

---

7. We also note in passing the reality in this case that respondent has been suspended in this jurisdiction since November 4, 1996, only a year or so short of the five-year minimum disbarment that he would receive by application of the moral turpitude statute.

8. This is the retroactive date recommended by the Board, on the basis of the § 14(g) affidavit filed by respondent. Respondent also filed a Goldberg affidavit, *see In re Goldberg,* 460 A.2d 982 (D.C.1983), on December 3, 1996. *See In re Slosberg,* 650 A.2d 1329, 1331 (D.C.1994)(distinguishing affidavits). Since

nothing turns on the distinction between these two dates, we simply accept the Board's recommendation in this regard.

9. This disposition also concludes the reciprocal discipline matter before us as a result of respondent's indefinite suspension by consent in Maryland. Our imposition of a fixed term of suspension, coupled with a requirement to show fitness for reinstatement, is consistent with our handling of other cases involving indefinite suspensions, a type of discipline not imposed in this jurisdiction. *See, e.g., In re Dietz,* 675 A.2d 33 (D.C.1996).