In re Claude A. ALLEN, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 433601).

No. 06–BG–958.

District of Columbia Court of Appeals.

Argued Feb. 22, 2011.

Decided Sept. 8, 2011.

Beth A. Stewart, Washington, DC, for respondent.

H. Clay Smith, III, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar

Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and RUIZ, Associate Judge, Retired.*

RUIZ, Associate Judge:

Respondent, Claude A. Allen, was arrested in Montgomery County, Maryland and charged with misdemeanor theft of property. After his guilty plea in Maryland Circuit Court, Bar Counsel initiated disciplinary proceedings in this jurisdiction. The Board on Professional Responsibility determined that respondent's conviction did not involve moral turpitude, and it recommended that respondent be suspended from the practice of law for one year and ordered to show proof of restitution as a condition of reinstatement. Bar Counsel filed an exception, and asks us to order respondent's disbarment. For the reasons that follow, we decline Bar Counsel's request and instead adopt the recommendations of the Board.

## I. Factual Posture

Respondent was admitted to the Bar of the District of Columbia Court of Appeals on July 10, 1992, by motion.[1] On October 29, 2005, respondent stole a Bose stereo, valued at $525, from a Target store in Gaithersburg, Maryland; on December 24,

2005, respondent stole a Kodak printer, valued at $237, from a Target store in Montgomery County, Maryland; and on January 1, 2006, respondent stole an RCA stereo, valued at $88, from a Target store in Rockville, Maryland. The thefts were accomplished through a scheme of purchase and fraudulent return: respondent would purchase the item with a credit card and exit the store with the item; he would thereafter return to the same store or to a nearby store with the receipt but without the item, select an identical item from the shelf, and "return" that item using the original receipt. In the end, respondent had both the item he originally purchased and the money he received when he "returned" it. Respondent was arrested on January 2, 2006, for theft of property from the Target Corporation at a Target store in Gaithersburg, Maryland. On August 4, 2006, he pleaded guilty in the Circuit Court of Montgomery County, Maryland, to misdemeanor theft of property under $500, in violation of Md.Code Ann., Crim. Law § 7–104(a) and (b).[2] The same day, the court sentenced respondent to two years of supervised probation, forty hours of community service, and fines and costs totaling $625.

On August 21, 2006, Bar Counsel submitted respondent's guilty plea to the clerk of this court, as required by D.C. Bar R. XI, § 10(a).[3] Upon Bar Counsel's motion,

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

1. Respondent is also a member of the Pennsylvania and Virginia bars. As a result of his conviction, respondent's licenses to practice law in Virginia and Pennsylvania were each suspended for ninety days. He is now a member in good standing in both jurisdictions.

2. The total value of the stolen property was $850.00; however, respondent was charged

only with the December 24, 2005, theft. The prosecutor proffered that the evidence at trial would have shown respondent's culpability in all three thefts.

3. Along with the guilty plea, Bar Counsel submitted a proposed order that respondent be suspended immediately from the practice of law pending the resolution of the matter and that the matter be referred to the Board for a determination of whether respondent's conduct involved moral turpitude within the meaning of D.C.Code § 11–2503(a). On September 11, 2006, respondent moved to set

we referred the matter to the Board on Professional Responsibility, which in turn referred the case to a hearing committee to determine whether respondent's "conviction involve[d] moral turpitude on the facts in light of any aggravating or mitigating circumstances" and to determine the appropriate discipline.[4] On December 28, 2007, Bar Counsel filed a Specification of Charges, alleging in Count I that respondent violated Rules 8.4(b) and 8.4(c) of the District of Columbia Rules of Professional Conduct, and alleging in Count II that respondent had been convicted of a "serious crime" as defined by D.C. Bar R. IX, § 10(b).

At the Hearing Committee's initial meeting on March 28, 2008, both parties introduced exhibits and a joint stipulation of facts. In the joint stipulation, respondent admitted that he committed the December 24 theft (the theft for which he pleaded guilty and was convicted), and he agreed that if the case had gone to trial, the prosecution would have shown that he committed all three thefts. After determining that it required a more developed record, the Committee continued the hearing until April 28, 2008, so as to receive live testimony. At the April 28 hearing, the committee heard testimony from respondent; respondent's psychiatrist, Dr. Thomas Goldman; and Detective David Hill of the Montgomery County Police Department. Respondent testified that at the time of the thefts, he was an Assistant to the President of the United States for Domestic Policy, advising the president on domestic issues and tasked with leading the White House response to Hurricane Katrina. He stated that he was married, had four children, and that his family moved at least five times in the eight months before October 2005, when the string of thefts began. Respondent explained that he would shop after work or before work to provide a buffer between his work and home lives and to relieve stress. Dr. Goldman, an expert in forensic psychiatry, testified that respondent "qualifie[d] for a diagnosis of kleptomania ... but ... a more accurate diagnosis would be an adjustment disorder with mixed disturbance of emotions and conduct." He explained that respondent's conduct was born out of the extraordinary stress of his job: "I think that, because he was in a state of high stress, that his ability to appreciate that this [conduct] was out of character for him and his ability to control his actions I think was substantially impaired...." At the conclusion of the hearing, Bar Counsel proposed that the Hearing Committee find that the conduct involved moral turpitude and that respondent be disbarred; in the alternative, Bar Counsel proposed that respondent be suspended for 90 days if the Committee determined his conviction did not involve moral turpitude.

On November 19, 2008, the Committee issued its Report and Recommendation. The Committee found that respondent had "engaged in a fraudulent return scheme to deprive Target of its property on at least three occasions." It also found each witness to be "generally unpersuasive" due to inconsistencies in their testimony and lack of corroboration;[5] however, the Commit-

aside Bar Counsel's proposed order, a motion that Bar Counsel did not oppose. We granted respondent's motion, and thus denied Bar Counsel's petition for interim suspension as moot.

4. Bar Counsel and respondent agreed that respondent's conviction did not involve moral turpitude *per se.*

5. In particular, the Hearing Committee did not find credible respondent's testimony that

tee credited the witnesses' testimony to the extent it aligned with the facts in the joint stipulation submitted by the parties. In support of mitigation, the Committee found that respondent had an "unsettled private life" caused by his family's five moves over eight months in 2005; that he had a "grueling" work schedule—working from 5 a.m. to 10 p.m.—in the weeks after Hurricane Katrina; that respondent "identified closely" with the suffering of those harmed by the hurricane; [6] that respondent faced "significant" pressure from his employment; that he had cooperated fully in the disciplinary matters in the District, Maryland and Pennsylvania and had completed the suspensions in these jurisdictions; and that he had been "an active role model in the community," had no history of prior arrests or bar discipline and had displayed "significant remorse" for his actions and apologized. The Committee determined that respondent had violated Rules 8.4(b) and 8.4(c) by committing the theft by fraudulent means, but that his actions did not amount to moral turpitude. It considered the mitigating factors in respondent's case, and recommended that respondent be suspended from the practice of law for 90 days, after noting that respondent had been suspended for 90 days by the Bars of Virginia and Pennsylvania.

Bar Counsel filed an exception with the Board, arguing that respondent's actions evidenced moral turpitude because they were "a well thought out and well-executed scheme marked by stealth and deception." Respondent's opposition asserted that the facts of the case negated an inference of moral turpitude. In its Report and Recommendation, issued on March 9, 2010, the Board adopted the facts and credibility determinations of the Hearing Committee, with minor modifications.[7] The Board noted that respondent's conduct "unquestionably" violated Rules 8.4(b) and 8.4(c). However, the Board also determined that Bar Counsel had failed to prove by clear and convincing evidence that respondent's thefts were for personal gain, and therefore Bar Counsel had failed to show that respondent's actions involved moral turpitude. The Board rejected the 90–day suspension recommended by the Hearing Committee, which it found too lenient in light of the "particularly serious" nature of conduct that involves "deceit, dishonesty or misrepresentation," and the "repeated and calculated" nature of respondent's misconduct. Instead, the Board recommended that respondent be suspended for one year and that his reinstatement be conditioned on making restitution to the Target Corporation. Bar Counsel filed an exception to the Board's Report.

## II. Moral Turpitude

Bar Counsel argues on exception that the Board erred in failing to find that respondent's criminal conduct involved moral turpitude because the theft involved intentional dishonesty for personal gain. Thus, Bar Counsel asserts, the appropriate sanction would be disbarment pursuant to D.C.Code § 11–2503(a). Respondent contends that the Board "properly applied the precedents of this Court to conclude that Bar Counsel failed to establish moral turpitude by clear and convincing evidence." Respondent urges us to adopt the one-year suspension recommended by the Board.

---

he had immediately returned the stolen items to Target.

**6.** The Committee found that respondent had been deeply affected by the sight of a man "sitting in front of the Superdome in a chair

for days with a sign on him saying, 'I've passed away. Please bury me.' "

**7.** For example, the Board rejected the Committee's observation that the stolen goods were "of only nominal value."

■■■ "[T]he scope of our review of the Board's Report and Recommendation is limited." *In re Berryman,* 764 A.2d 760, 766 (D.C.2000). In reviewing a recommendation of the Board, "the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record...." D.C. Bar R. XI, § 9(h)(1); *see In re Cleaver-Bascombe,* 986 A.2d 1191, 1194 (D.C.2010). However, "the Board's final determinations, whether they are characterized as findings of ultimate fact or conclusions of law, are owed no deference; our review is *de novo.*" *In re De Maio,* 893 A.2d 583, 585 (D.C.2006). Whether criminal conduct involves moral turpitude is such an ultimate fact that we review *de novo.* *In re Sneed,* 673 A.2d 591, 593 (D.C.1996).

■■■ Pursuant to D.C. Bar Rule XI, an attorney's conviction of a "serious crime" triggers "a formal proceeding in which the sole issue to be determined shall be the nature of the final discipline to be imposed."[8] D.C. Bar R. XI, § 10(d). Where that conviction involves moral turpitude, we are bound to disbar the attorney from the practice of law in the District of Columbia. D.C.Code § 11–2503(a) (2001) ("If a final judgment of conviction [of an offense involving moral turpitude] is certified to the court, the name of the member of the bar so convicted shall be struck from the roll of the members of the bar and such person shall thereafter cease to be a member."). We have drawn a distinction "between offenses which manifestly involve moral turpitude by virtue of their underlying elements, and those which do not." *In re Colson,* 412 A.2d 1160, 1164 (D.C.1979). If an attorney's crime inher-

ently involves moral turpitude—that is, moral turpitude *per se*—we have required his automatic disbarment upon conviction. *Id.* Contrarily, where an attorney's crime does not inherently involve moral turpitude, we have afforded an attorney an evidentiary hearing to determine whether the underlying conduct involved moral turpitude. *Id.* at 1165. An attorney convicted of a misdemeanor offense is likewise entitled to an evidentiary hearing because "no conviction of a misdemeanor may be deemed a conviction of a crime involving moral turpitude *per se,* even though that misdemeanor may be properly characterized as a 'serious crime.'" *In re McBride,* 602 A.2d 626, 629 (D.C.1992) (en banc); *see also id.* at 632–33 (explaining that insofar as moral turpitude "incorporates a revulsion of society toward conduct deeply offending the general moral sense of right and wrong" and society through its elected representatives has deemed misdemeanors to be less serious than felonies, it is "inconsistent" to apply moral turpitude *per se* to misdemeanor crimes).

■■■ In *Colson,* we noted that the term "moral turpitude" had "less than a finite definition," and offered additional guidance to the Board in adjudicating cases where moral turpitude is not inherent in the underlying crime. 412 A.2d at 1167–68. There, we explained:

If a crime is one involving moral turpitude, it is because the act denounced by the statute offends the generally accepted moral code of mankind. The definition of "moral turpitude" given in 2 Bouv. Law Dictionary 2247 (Rawle's Third Revision), is as follows:

---

**8.** The definition of a "serious crime" includes "(1) any felony, and (2) any other crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a 'serious crime.'" D.C. Bar R. XI, § 10(b).

An act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man.

And, Black's Law Dictionary 1160 (4th ed. 1951), adds that moral turpitude is "[c]onduct contrary to justice, honesty, modesty, or good morals." These are precisely the definitions which have been used by the courts in defining "moral turpitude" in disbarment proceedings.

*Id.* In *In re Spiridon,* 755 A.2d 463 (D.C. 2000), we addressed which particular "circumstances of transgression" were appropriate for the Board to consider in determining whether moral turpitude existed in an attorney's misdemeanor conviction. *Id.* at 466 (explaining that an examination solely of the events relating to the misdemeanor "would effectively eliminate the individualized examination that *McBride* mandates"). In such cases, we said, the appropriate scope is "a broader examination of circumstances surrounding commission of the misdemeanor which fairly bear on the question of moral turpitude in its actual commission, such as motive or mental condition." *Id.* at 467. In other words:

Once one accepts that conduct deemed criminal by a society may or may not involve moral turpitude, the determination becomes intensely specific to the particular facts and circumstances. Furthermore, the inquiry must be cognizant of its purpose: to determine whether the conviction of the offense in question rises to such a level that the legislature would have intended as a consequence the automatic disbarment of the attorney in question.

*Id.* at 468. We synthesized these lines of inquiry in *In re Sims,* 844 A.2d 353, *vacated,* 861 A.2d 1 (D.C.2004), to "distill the legal principles that guide the analysis" of whether a misdemeanor conviction involves moral turpitude on the facts. *Id.* at 365. As we stated:

To rise to the level of moral turpitude, an attorney's conduct must be an act of "baseness, vileness, or depravity," or be the type that manifests "a revulsion of society toward conduct deeply offending the general moral sense of right and wrong." ... In addition, the actions of the attorney must be motivated by personal gain or manifest intentional dishonesty for the purpose of personal gain, rather than be simply "misguided" actions. And, psychiatric or other medical testimony may show that an attorney's mental state precludes a finding of intentional dishonesty for personal gain.

*Id.* at 365–66 (citations omitted).

 We consider respondent's conduct within this framework, mindful that "the burden of proving the disciplinary charges rests with Bar Counsel, and [that] factual findings must be supported by clear and convincing evidence." *In re Anderson,* 778 A.2d 330, 335 (D.C.2001). This "more stringent" standard "expresses a preference for [the attorney's] interests by allocating more of the risk of error to [Bar Counsel,] who bears the burden of proof." *In re Dortch,* 860 A.2d 346, 358 (D.C.2004) (internal quotation omitted). Under the clear and convincing evidence standard, Bar Counsel must offer "evidence that will produce in the mind of the trier of fact a *firm belief or conviction* as to the facts sought to be established." *Id.* (quoting *In re T.J.,* 666 A.2d 1, 16 n. 17 (D.C.1995)) (emphasis added). In this case, Bar Counsel must show by clear and convincing evidence that respondent's conduct, viewed in context, involved moral turpitude on the facts. *Sims,* 844 A.2d at 365.

 As a starting point, "[w]e do not understand *McBride* [and its progeny]

to suggest that, where a misdemeanor is involved, it is easy for a convicted attorney to establish lack of moral turpitude," especially where "the crime would involve moral turpitude *per se* were it a felony." *Spiridon*, 755 A.2d at 468. In fact, as relevant here, "the circumstances surrounding the commission of any crime involving an intent to defraud would have to be *exceptional* to warrant the conclusion that moral turpitude was not involved." *McBride*, 602 A.2d at 635 (emphasis added). However, *McBride* and its progeny make clear that a misdemeanor conviction, without more, is insufficient to establish moral turpitude merely because the attorney's crime would involve moral turpitude *per se* if it were a felony. *See id.* In such a case, there must be something more in the facts to demonstrate that an attorney's conviction "rises to such a level that the legislature would have intended as a consequence the automatic disbarment of the attorney in question." *Spiridon*, 755 A.2d at 468; *see, e.g., Sneed*, 673 A.2d at 594–95 (ordering the disbarment of an attorney who partook in a scheme to defraud the government out of more than $15,000, of which he received $3,812.70). Here, a comprehensive examination of respondent's conduct—encompassing all three thefts, which totaled $850—weighs in favor of a determination of moral turpitude insofar as his entire course of conduct was felonious.[9] Yet, as the thefts occurred on three separate days over a period of three months, a determination of whether respondent's entire conduct should be viewed as felonious turns on

whether the State's Attorney would have prosecuted the thefts as three separate offenses or as one offense under the "single larceny doctrine."[10] *See Webb v. State*, 185 Md.App. 580, 971 A.2d 949, 953–54 (2009) (explaining that "a single scheme conceivably may be found where multiple takings from different owners at different locations are in quick and unbroken succession and from a limited area") (quoting *Kelley v. State*, 402 Md. 745, 939 A.2d 149, 157 (2008)). The Maryland Court of Special Appeals has counseled that in such cases this determination "is a factual matter that must be based on the evidence," *id.* at 953 (quoting *Kelley*, 939 A.2d at 156), and that "the burden of proving whether the takings were separate or part of a single scheme rest[s] with the State," *id.* at 953–54. Here, because the matter never proceeded to trial and respondent pled to only one misdemeanor offense, there has been no determination in the criminal proceeding that the three thefts (which respondent concedes) would be considered part of a single scheme under Maryland law. Moreover, Bar Counsel did not present this argument to the Hearing Committee or to the Board which, in turn, did not make any fact-finding on whether the three thefts should be considered as part of a single scheme, that could have been charged as a felony. *Cf. In re Kline*, 11 A.3d 261, 265 (D.C.2011) (declining to consider whether underlying act of forgery would have compelled disbarment where argument was not made to the Board). On this record, we cannot be certain that

---

**9.** At the time of respondent's plea, a theft totaling $850 would have amounted to a felony in Maryland. In 2009, Maryland raised the minimum amount for felony theft from $500 to $1,000. *See* 2009 Md. Laws ch. 655 (amending Md.Code Ann., Crim. Law § 7–104(g) to raise the threshold for felony theft from $500 to $1,000).

**10.** Under the single larceny doctrine in Maryland, "even if no single stolen item is valued at $500 or more, the amounts can be aggregated in order to charge a defendant for theft over $500 as long as the items were stolen in the course of the same incident." *Pitt v. State*, 152 Md.App. 442, 832 A.2d 267, 283 (2003).

respondent's underlying conduct, even if viewed comprehensively, rose to a level, commensurate to a felony, that Congress would have intended his disbarment under § 11–2503(a).

Bar Counsel argues that respondent's charged conduct amounted to moral turpitude in that respondent committed an intentional act of dishonesty for his personal gain. Under the plain language of the statute on which respondent was convicted, it is clear that respondent committed an intentional act of dishonesty, *see* Md.Code Ann., Crim. Law § 7–104(a) & (b),[11] and because respondent kept the stolen items, he actually personally gained from the commission of the theft. Yet such a determination does not end our inquiry. We must look beyond the act itself, to the motivation behind the act—that is, whether the act was motivated by a desire for personal gain—to determine whether respondent's crime involved moral turpitude for purposes of disbarment under § 11–2503(a). *See, e.g., Spiridon,* 755 A.2d at 469 ("[T]here is a significant suggestion in the record that respondent's actions were not so much motivated by a desire for personal gain as by psychological disturbances. . . ."); *In re Kent,* 467 A.2d 982, 984 (D.C.1983) ("[T]he unusual facts and circumstances of this case clearly indicate that respondent's actions were prompted by a neurotic desire to be caught rather than a desire for personal profit."). It is on this point that Bar Counsel cannot meet his burden of proof by clear and convincing evidence.

Both the Hearing Committee and the Board found that respondent was not motivated by a desire for personal gain. Although the Hearing Committee did not credit the testimony of Dr. Goldman with respect to his precise (and changing) diagnosis of respondent's condition, the Committee did impliedly credit his testimony that respondent's actions resulted from something other than a desire for personal gain. The Committee stated:

> Respondent's role in the White House's Hurricane Katrina response, coupled with his unsettled private life—moving his residence over and over again while trying to keep his word to his family, undoubtedly caused stress that *may have manifested* itself in one of the conditions identified by Dr. Goldman. This Hearing Committee ... *cannot confidently conclude* that [r]espondent acted out of personal gain as opposed to self-defeating behavior consistent with a psychological problem or by a neurotic desire to be caught. . . .

(emphases added). The Board adopted this finding, adding that "[r]espondent's judgment and impulse control were impaired by virtue of the profound stress he experienced for an extended period." Thus, the Board concluded that respon-

---

**11.** The relevant portions of the statute read:

> Unauthorized control over property (a) A person may not willfully or knowingly obtain or exert unauthorized control over property, if the person: (1) intends to deprive the owner of the property; (2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or (3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

> Unauthorized control over property—By deception (b) A person may not obtain control over property by willfully or knowingly using deception, if the person: (1) intends to deprive the owner of the property; (2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or (3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

> Md.Code Ann., Crim. Law § 7–104(a) & (b).

dent's conduct "was the aberrational result of the exceptional stressors in his personal and professional life, rather than a desire for personal gain."

The findings of the Committee and the Board have support in the record, including respondent's own testimony and the testimony of Dr. Goldman, and we see no reason to upset them. *See Cleaver-Bascombe*, 986 A.2d at 1194. Moreover, the Board correctly concluded that the "exceptional stressors" present in this case negate a finding that respondent acted for his personal gain. In *Sims*, we explained that "psychiatric or other medical testimony may show that an attorney's mental state precludes a finding of intentional dishonesty for personal gain." *Sims*, 844 A.2d at 366. Similar evidence is relevant here. Contrary to Bar Counsel's assertion that there is "no credible psychiatric or medical testimonial evidence," the Committee credited Dr. Goldman's testimony that there was some psychological condition—though the Committee did not identify a specific disorder—that might have motivated respondent's criminal conduct, other than a desire for personal gain. We think that this consideration is properly part of our "broader examination of circumstances surrounding commission of the misdemeanor which fairly bear on the question of moral turpitude in its actual commission." *Spiridon*, 755 A.2d at 467; *see also Kent*, 467 A.2d at 983–84 (holding, in a case where the attorney suffered from "severe transient emotional distress" at the time of her criminal conduct, that the unusual facts of the case precluded a find-

ing of moral turpitude). To the extent that respondent's exceptional stress affected his judgment at the time he committed the theft, it unquestionably bears on whether his conduct involved moral turpitude. We may not discount the effect that this stress had on respondent's conduct, especially in light of expert testimony that it "substantially impaired his impulse control and caused him to act in uncharacteristic ways." On this record, we agree with the Board's determination that unrebutted evidence that respondent's actions were the reflection of extreme stress was an exceptional circumstance that precluded a finding that respondent engaged in intentional dishonesty for personal gain.[12]

In the end, this case turns on the allocation of the burden of proof. As in every disciplinary proceeding, Bar Counsel bears the burden of persuasion in this matter. Here, Bar Counsel has not shown by clear and convincing evidence that respondent engaged in an intentional act of dishonesty for personal gain. The underlying facts are not disputed: respondent's long work hours dealing with a natural disaster of immense proportions under intense national scrutiny, his personal emotional reactions to individuals suffering in that disaster, and the repeated physical moves with his family during the period immediately before the thefts. While the Hearing Committee did not affirmatively determine that respondent's criminal conduct was caused by these stressful factors that respondent experienced, it could not say with confidence that respondent *was not* so affected by the stress he experienced. Inso-

---

**12.** We do not mean to indicate that an attorney's stress qualifies as an exceptional circumstance in every disciplinary proceeding. The legal profession is a stressful occupation that can, and often does, take a toll on the mental health of its practitioners. As we have said, however, the determination of moral turpitude is "intensely specific to the particu-

lar facts and circumstances" of each case. *Spiridon*, 755 A.2d at 468. The Hearing Committee must continue to determine on the unique facts and circumstances of each case whether an attorney's stress is of such a significant degree that it "fairly bear[s] on the question of moral turpitude." *Id.* at 467.

far as the Committee and the Board did not completely discount Dr. Goldman's opinion that respondent's actions were motivated by his stress, Bar Counsel did not meet his burden of persuasion, to a firm conviction or belief, that respondent's actions were driven by the desire for personal gain—rather than the extreme stress of his peculiar circumstances—that we have deemed necessary to conclude that a misdemeanor conviction for fraud involves moral turpitude. Under our "limited" standard of review, *Berryman,* 764 A.2d at 766, we adopt the findings of the Committee and the Board. We, therefore, agree that Bar Counsel did not prove by clear and convincing evidence that respondent's actions were motivated by intentional dishonesty for personal gain, such that respondent's conviction involves moral turpitude on the facts and requires disbarment.

### III. Sanction

■ Under D.C. Bar Rule XI, we "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). In surveying similar cases, the Board's recommended one-year suspension appears to be consistent with sanctions for comparable conduct. In *Spiridon,* we suspended the attorney for one year, with a fitness requirement, for stealing $18 in bus fare from the bus he was driving. 755 A.2d at 464, 469. In *In re Soininen,* 783 A.2d 619 (D.C.2001), we suspended the attorney for thirty days for attempting to steal flowers and potting soil, valued at less than $200, while en route to an Alcoholics Anonymous meeting.[13] *Id.* at 620, 622. In *Kent,* we suspended the attorney

for thirty days for attempting to steal merchandise from a department store while under extreme emotional distress. 467 A.2d at 983, 985.

In this matter, the Board sought to strike a balance with these cases. The Board was aware that the one-year suspension ordered in *Spiridon* was for "less culpable" misconduct as it involved a smaller amount and was "directly tied to a longstanding psychiatric disability." The Board also noted its concern that respondent's misconduct "infringe[d] on the core values of Rule 8.4(c)" and involved a "repeated and calculated" scheme of deception and dishonesty. After taking into account all the aggravating and mitigating factors and the purpose of protecting the public, the Board recommended a one-year suspension with a restitution requirement. Bar Counsel does not point to any comparable case that would support a longer suspension. Indeed, in the absence of a determination of moral turpitude warranting disbarment, Bar Counsel recommends a 90–day suspension.

We agree with the Board that a 90–day suspension is too lenient a sanction for respondent's serious misconduct and defer to the Board's recommendation of a longer, one-year suspension, with restitution required as a condition of reinstatement. Undoubtedly, the offense for which respondent has admitted guilt is serious, and his fraudulent conduct breached a lawyer's essential obligation not to act in a manner "involving dishonesty, fraud, deceit, or misrepresentation." D.C. Prof. Conduct R. 8.4(c). Our holding that the theft did not involve moral turpitude does not diminish the severity of respondent's mis-

---

**13.** Soininen's suspension was stayed, and she was placed on probation, on the condition that she maintain her sobriety, that she authorize the Lawyer Counseling Program to report any lapse in her sobriety to Bar Counsel, and that she abide by all rules of professional conduct. *Soininen,* 783 A.2d at 622.

conduct, especially considering the repeated nature of his offenses. Yet, as the Board found, substantial mitigating evidence exists, including respondent's clean disciplinary record, his expressed remorse for his conduct, his successful readmission to the Bars of Pennsylvania and Virginia, his cooperation throughout the disciplinary proceedings, and his completion of the conditions of his Maryland sentence (which included payment of a fine and community service). We think that the sanction recommended by the Board is apt given that the repeated criminal conduct at issue here is more severe than the thefts in *Soininen* and *Kent,* for which the attorneys were suspended for thirty days. As in *Spiridon,* "there is a significant suggestion in the record that respondent's actions were not so much motivated by a desire for personal gain" as by "psychological disturbances." *Spiridon,* 755 A.2d at 469. As such, the one-year suspension ordered in *Spiridon* seems to be a suitable baseline. To the extent that respondent's conduct was more culpable than in *Spiridon,* and his psychological disturbance less well-defined and documented, we think that the other mitigating factors at play here are appropriately considered in determining respondent's sanction.

Accordingly, respondent, Claude A. Allen, is hereby suspended from the practice of law in the District of Columbia for a period of one year, effective upon respondent's filing of an affidavit required pursuant to D.C. Bar R. XI § 14(g). Respondent's reinstatement to the Bar of the District of Columbia Court of Appeals will be conditioned on proof of his payment of restitution to the Target Corporation, with interest.

*So ordered.*