McLeese, Associate Judge, concurring:
I agree with the court that we should adopt both (1) the conclusion of the Board on Professional Responsibility (Board) that Mr. Rohde's conviction for leaving the scene of an accident did not involve moral turpitude and (2) the Board's recommended sanction. I write separately because I do not agree with the court's analysis of the question whether Mr. Rohde's conviction involved moral turpitude on the facts. Ante at 1131-35. Although our cases use somewhat varying language to describe the nature of the inquiry into whether a conviction involved moral turpitude on the facts, I have no quarrel with the formulation the court emphasizes: the Board must conduct an "examination of circumstances surrounding commission of the [crime] which fairly bear on the question of moral turpitude in its actual commission." In re Spiridon , 755 A.2d 463, 467 (D.C. 2000). As the court notes, ante at 1131, that inquiry is broader than simply examining the elements of the crime. Conversely, as the court well expresses it, the inquiry "is not an open-ended assessment of respondent's past behavior, character, or lifestyle." Ante at 1133-34. Thus, for example, we have said that the inquiry into whether a crime involved moral turpitude on the facts should not take into account considerations "such as absence of a previous disciplinary record and expression of remorse," because those considerations are "totally irrelevant to whether a crime involved moral turpitude." Spiridon , 755 A.2d at 467-68 (internal quotation marks omitted).
Although we thus have a guidepost at each extreme, the language of our cases *1139 does not provide clear guidance about the exact line between those circumstances that may appropriately be considered in determining whether a crime involved moral turpitude on the facts and those circumstances that may not. Most of our cases speak in terms that suggest a broad inquiry. See, e.g. , In re Allen , 27 A.3d 1178, 1184 (D.C. 2011) ("Bar Counsel must show by clear and convincing evidence that respondent's conduct, viewed in context , involved moral turpitude on the facts.") (emphasis added); In re Powell , 836 A.2d 579, 580 n.1 (D.C. 2003) ("The Committee took into account the facts surrounding respondent's plea and found that, ... in light of the full set of facts ..., the crime did not constitute a crime involving moral turpitude.") (emphasis added); Spiridon , 755 A.2d at 466 (rejecting as unduly narrow approach that permitted "examination solely of the events directly relating to the crime itself, that is, how the crime was committed"); id. ("[T]he Board was not only permitted but required to hold a hearing to determine whether respondent's conduct involved moral turpitude under all the facts and circumstances found at that hearing.") (emphasis added); id. at 467 ("We think therefore that [ In re McBride , 602 A.2d 626 (D.C. 1992) (en banc) ] permits a broader examination of circumstances surrounding commission of the [crime] which fairly bear on the question of moral turpitude in its actual commission, such as motive or mental condition.") (emphasis added); id. at 469 (referring to "the totality of the facts and circumstances") (emphasis added). Although the court disagrees that the language in these cases supports a conclusion that the inquiry into moral turpitude on the facts is broad, ante at 1132 n.16, it seems to me indisputable that an inquiry into "the full set of facts" or "all the facts and circumstances" is a broad inquiry.
On the other hand, the language from In re Colson cited by the court, ante at 1131-32, does somewhat cryptically suggest a more limited inquiry. 412 A.2d 1160, 1164 (D.C. 1979) (en banc) ("An attorney is subject to disbarment under the statute for his conviction of a crime involving moral turpitude, not for commission of an act involving moral turpitude.") (emphasis added). I do not believe that it is necessary to determine in this case precisely how narrow or broad the inquiry into moral turpitude on the facts should be. In my view, even taking into account all of the conduct Disciplinary Counsel relies upon, Mr. Rohde's conviction for leaving the scene of an accident did not involve moral turpitude on the facts, given the Hearing Committee's conclusions about the role of untreated alcoholism in the offense.
The court does not take the approach just suggested. Rather, it concludes that Mr. Rohde's decision to drink and drive is outside the scope of the permissible inquiry into moral turpitude on the facts. Ante at 1133-35 & n.22. I disagree with the court's approach in several respects.
First, I do not understand the distinction the court seems to draw between Mr. Rohde's blackout, which the court treats as relevant to moral turpitude, ante at 1132-33 & n.17, and the circumstances that caused that blackout, which the court treats as irrelevant to moral turpitude, ante at 1133-35 & n.22. I do not see how one can sensibly assess whether and how a respondent's blackout bears on moral turpitude without considering how the respondent came to black out. On that point, imagine the following hypothetical scenario. The respondent is not an alcoholic but rather is a violent racist. He decides to get as drunk as possible and then drive around looking for a victim to run over. Accordingly, he gets extremely drunk, starts driving, has an accident, and leaves the scene of *1140 the accident. At a Bar-discipline hearing, the respondent introduces evidence, credited by the factfinder, that he was blackout drunk at the time he had the accident and left the scene. In my view, the blackout in this hypothetical scenario results from moral turpitude, rather than reducing moral turpitude. In the present case, by contrast, Mr. Rohde's conduct leading up to and during his crime appears to be attributable to untreated alcoholism. Taking that conduct into account, as I would assume for current purposes that we must, I conclude that Mr. Rohde's crime did not involve moral turpitude on the facts. I thus agree with the court, ante at 1134 n.22, that this case is distinguishable from the hypothetical scenario outlined above, because the circumstances of the blackout in the hypothetical reflect moral turpitude, whereas the circumstances of the blackout in this case do not. The point of the hypothetical, though, is that it is not sensible to try to determine whether and how a blackout bears on moral turpitude without considering why the blackout occurred.
Second, the court suggests that if the inquiry into moral turpitude on the facts should properly take into account the circumstances that caused Mr. Rohde to black out, then the inquiry must also take into account aspects of respondents' "past behavior, character, or lifestyle," including "every action taken or decision made by a respondent that temporally precedes the commission of the offense." Ante at 1132 n.16, 1133-34 & n.22. That is not so. When determining whether a respondent's conduct in committing a crime reflects moral turpitude on the facts, many aspects of the respondent's life and prior conduct are obviously not relevant. To take one of many examples, the fact that a respondent had committed an unrelated bank robbery five years earlier would surely be irrelevant to the inquiry into whether leaving the scene of an accident reflected moral turpitude on the facts. My disagreement with the approach taken by the court is not that the court fails to approve consideration of every aspect of Mr. Rohde's prior life. Rather, it is with the court's decision to approve consideration of Mr. Rohde's blackout but to preclude consideration of circumstances leading to that blackout that are arguably relevant to whether the blackout reflects moral turpitude.
Third, I fear that the court's opinion will create confusion for the Hearing Committees, the Board, and future divisions of this court. Although the court draws a distinction between the fact of Mr. Rohde's blackout and the circumstances that caused that blackout, the court does not provide a concrete articulation or explanation of the basis for that distinction.
Finally, the approach adopted by the court conflicts with the approach this court took in In re Tidwell , 831 A.2d 953 (D.C. 2003). That case, like this one, presented the question whether a respondent's crime of leaving the scene of an accident involved moral turpitude on the facts. Id. at 957-60. When analyzing that question, the court in Tidwell did not limit itself to Mr. Tidwell's mental state at the time of the crime. Id. To the contrary, the court explicitly considered Mr. Tidwell's broader history with alcohol. Id. at 958 (noting Mr. Tidwell "suffered from [an] alcohol problem[ ]"); id. at 959 (distinguishing Mr. Tidwell's situation from that of respondent in earlier case by pointing out that earlier respondent "did not have any alcohol problems, nor was he likely to commit a similar act in the future. The same cannot be said with respect to Mr. Tidwell."). These passages from Tidwell are considered parts of the court's analysis of whether Mr. Tidwell's conduct in leaving the scene of an accident involved moral turpitude on the facts. In my view, *1141 the court exceeds its authority by treating as irrelevant circumstances that the court treated as relevant in Tidwell. See, e.g. , Seminole Tribe v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("As a general rule, the principle of stare decisis directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.") (internal quotation marks omitted); see generally M.A.P. v. Ryan , 285 A.2d 310, 312 (D.C. 1971) (divisions of this court are bound by prior decisions of court).
For the foregoing reasons, I respectfully concur.